UTICA,
Aug. 1824.

In the matter of the application of Timothy Hurd *against*
Magee, Sheriff of Steuben.

Hurd
v.
Magee.

On the 21*st November*, 1818, a judgment was docketed
in this Court, in favour of *Reeve* against *Smith*, for $192,09,
on which execution issued, tested *Oct.* 9*th* of the same year,
returnable at the ensuing *January* term, directed to the Sher-
iff of *Steuben ;* who, on the 19*th* of *January*, 1819, sold the
farm on which *Smith* then resided, to *Hurd*, and executed a
deed for the same to him. This was before the act which al-
lows the redemption of lands sold upon execution had passed.
On the 18*th October*, 1814, a judgment for $103,88, was
docketed in this Court, in favour of one *Peterson*, against
the same *Smith.* On this judgment execution issued; by
virtue whereof *Magee*, Sheriff of *Steuben*, on the 30*th Nov.*
1822, sold the same farm to *Hurd*, for $159,06, and gave a
certificate of this sale, &c. *April* 6*th*, 1823, a judgment was
docketed in this Court, in favour of *Henry Welles*, against
*Smith*, for $210 : and on the 3*d Oct.* 1820, a judgment
was docketed in this Court, in favour of *Baker* and another,
defendants, at the suit of *Smith*, for $33,55 costs. After
the expiration of 15 months from the sale by *Magee*, *Hurd*
demanded his deed of *Magee*, which he declined giving, hav-
ing previously executed a deed to *Welles*, who had redeemed
as creditor by judgment, and as assignee of the judgment in
favour of *Baker*. On affidavits of these facts,

A judgment
creditor has no
right to re-
deem under
the 3d section
of the act of
April 12th,
1820, (sess. 43,
ch. 184) unless
his judgment
be a lien
on the land
which he seeks
to redeem.

It cannot be
a lien where
the land of the
debtor is sold
and conveyed
either by the
debtor or by
the sheriff, be-
fore the judg-
ment of the
creditor claim-
ing to redeem
is docketed.

And tho' it
be insisted that
the sale was
fraudulent and
void as to cre-
ditors, the
court will not
try this ques-
tion on mo-
tion.

*J. C. Spencer*, moved for a mandamus requiring the Sher-
iff to execute a deed to *Hurd*.

*J. A. Collier*, contra, read an affidavit, stating that the
judgment in favour of *Peterson* was in the *Steuben* Common
Pleas ; and that on the sale in 1822, *Hurd* and one *Tuthill*
became joint purchasers ; that *Welles* redeemed after a year,
and before 15 months from this sale ; that *Smith* continued
in possession of the farm in question till after *Welles'* judg-
ment was obtained ; and that there was a material variance

between the judgment and execution under which *Hurd* originally purchased.

He argued that though *Hurd* had a right to insist on his first purchase, he cannot do so at this stage of the proceeding. He should have confined himself solely to the right which he thus acquired. But he has waived his former right, and must now be confined to that which he acquired under the sale of 1822. After thus making his election, it is in the power of any judgment creditor to come in and redeem, if his judgment is of a date anterior to the expiration of 15 months after that sale. He submits to the elder and better title. This he had a right to do, and might have redeemed as between us and *Peterson*. He admits that he acquired no right upon his first purchase; and, indeed, this is true independent of his second, as it respects the creditors of *Smith*, who continued in possession of the farm long after the first, which was evidently fraudulent. We were right in disregarding it, and redeeming. *Hurd* had a right to redeem from us, as assignee or grantee of the land, but the time for this has gone by. The year—the 15 months have expired. Had he redeemed as grantee, the second sale would have been void. (*Sess.* 43, *ch.* 184, *s.* 2.) What right has he to lie by, and compel us to suffer his taking a title under the elder judgment? Can *Hurd*, having waived his right to redeem, say, after the year and his rights are gone, "*I am grantee*, and yet have a right to a deed under the senior judgment, in virtue of my second purchase?" His remedy would have been complete without this. If evicted, either by a stranger or any other person, the statute, (1 *R. L.* 504) declares that the money which he has paid shall be refunded. He waives all right to that remedy, by his second purchase, because actual eviction is the sole foundation upon which it would rest. This Court have decided that the judgment is a *lien*, though obtained more than a year after the sale. Thus our right is complete, as it respects the second sale; and will the Court suffer *Hurd* to lie by till his right is gone as grantee, and then come forward in the character of a purchaser? Will such a course accord with the spirit of the act to which this Court have given a construction? " This

statute, says the Chief Justice, in *Van Rensselaer* v. *Sheriff of Albany*, (1 *Cowen's Rep.* 510) "is evidently remedial; and, in its exposition, it is our duty to bear in mind the evil intended to be prevented, and the remedy proposed; and so to construe the act as to suppress the evil and advance the remedy." Are we not within the intention of the legislature? Will not the object of the statute, as avowed by all the Court, which is to keep up a perpetual auction, be in this manner the most effectually promoted? Other judgment creditors ought not to stand peaceably by, and see *Hurd* invested with this additional title, which fortifies his first, and renders him secure in a purchase which was evidently fraudulent.

[SUTHERLAND, J. But it is necessary that you should shew your judgment to be a *lien* on this land. How can this be; when the title of *Smith* was sold before the passage of the act, and a deed given which passed the title?]

*Collier.* *Smith* was still suffered to continue in possession. Our judgment found him there; and, at any rate, it attached upon his possessory interest, or whatever interest he had. He could not set up an outstanding title in *Hurd*, or any one else, to defeat an ejectment founded on a purchase under our judgment against him. It would be no more than fair to infer that he had acquired a title since the first sale. We cannot be conusant of what his right is, and, at any rate, should not be concluded by this summary application. We say *Hurd's* purchase was fraudulent, and that the sale was upon an irregular execution. The whole was void; and the Court would not order an amendment so as to conclude us. They will rather incline to keep the right of redemption open to all the creditors. They should leave *Hurd* to his elder title. He has no right to his double character. It is enough that he claims under a fraudulent sale, or doubtful title. The Court should not deprive us of our right to contest it. I agree that the language of some of the Court, in *Dickenson* v. *Gilliland*, is against the idea of our having a *lien*. But the sale, in that case, to *Prindle*, was absolute and

honest.  Here, we say, the sale was not only fraudulent, but it was subject to an elder judgment, under which a subse-quent sale takes place.  Besides, in that case, the grantee was in possession.

*Spencer,* in reply.  *Welles* has no right to appear here at all ; or, if otherwise, we have a prior right to redeem.  The sale under the first judgment was absolute and binding upon *Smith,* as if he had executed the deed himself, subject, to be sure, like every other sale, to be defeated by a paramount title, either by judgment or otherwise.  How can *Hurd's* acts be made to operate as a waiver of rights which he had acquired by deed ?  This is the first time, I believe, it was ever contended that a man forfeited his right to land by the purchase of a judgment, or bidding in under a judgment with the view to fortify and sustain his title.  The course of *Welles* was plain.  He should have attended the sale, and become a purchaser himself.

It is said that *Smith* was in possession, but this was no ev-idence of title.  Admit that he could not controvert *Welles'* title in an action of ejectment : a recovery in that action is not conclusive evidence of title.  It relates merely to the right of possession.  It is not enough for *Welles* to say that he will contest the right acquired under *Reeve's* judgment, without shewing a single fact to impeach it ; for I presume the variance between the judgment and execution is not se-riously insisted on.  A subsequent judgment creditor cannot object this.  If any thing serious was intended on the head of fraud, why was not the proper remedy resorted to ?  Why was not a bill in Equity filed, in order to sift the fraud ?  The variance is plainly amendable.  Fraud is the only ground of opposition at law or in Equity, and the right to relief, in ei-ther case, is gone, by our purchase.

It is said that a perpetual auction is to be kept up.  Be-tween whom ?  Those creditors, only, whose judgments are a *lien* upon the land.  It has been twice decided, that where there is no *lien* there is no right to redeem.  (*Erwin* v. *Schri-ver,* 19 *John* 379.  *Dickenson* v. *Gilliland,* 1 *Cowe.'s Rep.* 481.)  And a sale under *Hurd's* judgment, before the re-

demption act, divested *Smith's* title, so that there was nothing upon which *Welles'* or *Baker's* judgment could operate.

*Curia.* This motion must be granted. The Sheriff's sale and conveyance under *Reeve's* judgment divested the title of *Smith*, the judgment debtor. He then had no interest upon which the subsequent judgment, either of *Baker* or *Welles*, could become a *lien.* Having no *lien*, it is well settled by the authorities cited, that *Welles* had no right to redeem.

Then it is said, that the judgment of *Reeve*, and the purchase of *Hurd*, were fraudulent as to the other creditors of *Smith ;* but the suggestion is almost entirely gratuitous. There is nothing in the affidavits shewing any thing like fraud ; yet suppose a case of fraud made out, we could not try it in this summary form. *Welles* should have caused the proceedings to be stayed, or filed his bill in Equity, and prevented the second sale, till the question had been settled whether his judgment could be let in, on account of the fraud, or not.

The Sheriff must execute the deed to *Hurd*, as it is applied for ; but we do not interfere with the conveyance to *Welles.* It can do no harm, if, as we hold, it passed nothing.

Motion granted.