The TORO COMPANY, a corporation, Plaintiff,

v.

L. R. NELSON CORPORATION, a corporation, Defendant.

No. 81–1019.

United States District Court, C. D. Illinois.

Oct. 19, 1981.

Randall W. Moon, Peoria, Ill., James E. Olds, Minneapolis, Minn., Darrell K. Morse, Cottage Grove, Minn., Dean P. Edmundson, St. Paul, Minn., for plaintiff.

George M. Sirilla, W. Warren Taltavull, Raymond F. Lippitt, Cushman, Darby & Cushman, Washington, D. C., Paul C. Cation, Gregg N. Grimsley, Vonachen, Cation, Lawless, Trager and Slevin, Peoria, Ill., for defendant.

## DECISION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

ROBERT D. MORGAN, Chief Judge.

Plaintiff, as assignee of Hunter U. S. Patent No. 3,854,664, hereinafter "the patent," filed its complaint alleging that defendant is infringing claims 12, 14 and 15 of the patent. Claim 12 is an independent claim. Both claims 14 and 15 depend from claim 12. Defendant's answer denied infringement and asserted the invalidity of all the claims in suit.

The patent relates to "pop-up" lawn sprinklers, i. e., sprinkler units embedded in fixed positions in the soil of the area to be sprinkled, in which the nozzles are disposed at or below ground level when the system is not in operation. The system is so designed that each sprinkler nozzle rises a predetermined height above ground level when water pressure is applied into the unit. The nozzle of each sprinkler head rotates, and means are provided to disperse water issuing from the system over a predetermined area. As is clear on the face of the asserted claims, and as Mr. Hunter, the inventor, testified on his deposition, the asserted claims are broad enough to cover sprinkler systems which are permanently disposed above ground level, as well as the pop-up exemplification.

Claim 12 describes a sprinkler system having fluid under pressure flowing therethrough, with a sprinkler head operatively connected thereto having a nozzle with a plurality of passageways therethrough for dispersing fluid from the system. The claimed improvement comprises impeller

means associated with the head to rotate the nozzle in response to fluid passing through the system, a housing enclosing the impeller means and a sealing means between the upper portion of the housing and the nozzle while permitting the fluid to flow out of the passageways in the nozzle. The seal is further described as being adapted upon application of fluid pressure to increase the pressure between it and the nozzle and the upper portion of the housing.[1]

The effective filing date of the patent is March 30, 1973. Following its deposing of Mr. Hunter, defendant filed its motion for summary judgment of the invalidity of all asserted claims. Defendant contends that every element of the combination claimed in the asserted claims is admittedly described in Reynolds U. S. Patent No. 2,990,120, and that the claims are thus anticipated within the intendment of 35 U.S.C. 102(b).[2] This 120 patent, which issued June 27, 1961, was not before the Patent Examiner on the Hunter application. Defendant supports its motion by its submission of the 120 patent and Hunter's deposition testimony to the court.

1. The claims in suit are the following:

12. In a sprinkler system having fluid under pressure flowing therethrough, and a sprikler head operatively connected to said system having a nozzle for dispersing said fluid therefrom, said nozzle having a plurality of passageways extending completely therethrough, the improvement which comprises: impeller means associated with said head operatively engaging said nozzle for rotating said nozzle in response to said fluid passing through said system, said impeller means enclosed by a housing having an upper portion and an open lower end for receiving said fluid therein, and sealing means disposed between the upper portion of said housing and said nozzle for preventing fluid entering said housing from passing between the upper portion of said housing and said nozzle while permitting said fluid to flow out of the passageways in said nozzle, said sealing means being adapted upon application of fluid under pressure to increase the pressure between it and said nozzle and the upper portion of said housing.

14. In the sprinkler system of claim 12 further including template means associated with said sprinkler head disposed between said nozzle and said sealing means adapted to set a predetermined pattern of spray of fluid under pressure from said nozzle.

Plaintiff's response to that motion is limited to one narrow position; namely, a convoluted assertion that Mr. Hunter's admission that the sealing means recited as an element in claim 12, as described in the 120 patent, is not factually accurate. It relies upon the language of 35 U.S.C. 112, that "an element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure" described in the specification or equivalents thereof.[3] It also relies upon affidavits of Mr. Hunter and Mr. Reynolds, the 120 patentee, which are designed to refute Mr. Hunter's admission that the sealing means of claim 12 is found in the 120 patent. That stated conclusion is based upon the opinions of the affiants that the claim 12 seal and the 120 seal are not the same because the claim 12 seal is an expansion seal while the 120 seal is a compression seal.

Plaintiff argues that the language of claim 12, related to sealing means, is a "means-plus-function" claim which requires reference to the specification to recognize

15. In the sprinkler system of claim 14 wherein said template means is a metallic disc having aperture means therein shaped for providing said predetermined pattern of spray in a fluid communication with the fluid entering said sprinkler head and in selective fluid communication with the passageways of said nozzle.

2. Section 102(b) provides:

"A person shall be entitled to a patent unless—

\*     \*     \*     \*     \*     \*

"(b) The invention was patented or described in a printed publication in this or a foreign country, or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."

3. The last paragraph of Section 112 provides, in part:

"An element in a claim for a combination may be expressed as a means \* \* \* for performing a specified function without the recital of structure, \* \* \* in support thereof, and such claims shall be construed to cover the corresponding structure, \* \* \* described in the specification and equivalents thereof."

that the sealing means recited in claim 12 recites an element which is not described in the 120 patent, because there is a distinction in the respective placement and a further distinction in the operative mode between the two.

■ Summary judgment of invalidity is appropriate in patent litigation in a case in which it clearly appears that there is no genuine issue as to any material fact which requires trial. *E. g., Shemitz v. Deere & Co.,* 623 F.2d 1180, 1184 (7th Cir. 1980), *cert. denied,* 449 U.S. 149, 101 S.Ct. 320, 66 L.Ed.2d 149; *Centsable Products, Inc. v. Lemelson,* 591 F.2d 400 (7th Cir. 1979), *cert. denied,* 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52. It is necessary to conclude that summary judgment is appropriate in this cause because the application of the provisions of Section 102(b), to facts which cannot be disputed, compels the conclusion that the asserted claims are fully anticipated by the 120 patent.

The critical facts are stated as follows. The effective filing date of the patent is March 30, 1973. The 120 patent, which issued June 27, 1961, was not before the Patent Examiner on the Hunter application. Mr. Hunter, the patentee in the patent in suit, is a managing agent of the plaintiff, who is fully qualified as an expert in the sprinkler art.[4] He was familiar with the 120 patent, and he had examined the commercial embodiment of the combination therein described in about 1958 to 1960. On his deposition, Mr. Hunter was asked to compare, element by element, each element in the asserted claims to the 120 patent and, in each instance, to state whether the particular element was described in the 120 patent. His deposition answers were unequivocal. He stated that each element of the asserted combination was described in the 120 patent.[5]

The affidavits of Mr. Hunter and Mr. Reynolds do not present any genuine factual issue which would militate against the entry of summary judgment. Substantially, what Mr. Hunter states in his affidavit is that, at the time of his deposition testimony, he failed to recognize that the seal of the 120 patent and the seal described in his patent are distinguished both by physical placement within the combination and by their respective functional characteristics. Mr. Reynolds' affidavit assumed that the expansion, operational function of the seal for which plaintiff contends, is stated as a limitation in the asserted claims. He therefore stated, based upon that erroneous assumption, that the 120 seal does operate in a manner different from the seal of the asserted claims, and that, therefore, his 120 patent does not describe the Hunter seal.

Plaintiff, with reference to the sealing element of its claim 12 combination, quotes the language of claim 12, to-wit: "sealing means disposed between the upper portion of" the housing and the nozzle *"for* (stressed by plaintiff) preventing fluid entering said housing from passing between" said upper portion and the nozzle "while permitting said fluid to flow out of the passageways in said nozzle." It character-

4. Mr. Hunter has been actively engaged in the sprinkler business since 1957. He has been employed by plaintiff since about 1962. When his deposition was taken, he was the managing director of Toro Technology Center. Some fifty patents have issued in his name, many of which related to the sprinkler art. He maintains a patent collection, related to the sprinkler art, of approximately 1,000 patents. Among his other functions, he reviews for plaintiff all new patents in the sprinkler field. Thus, he did not testify on deposition as a novice in the realm of patents.

5. Mr. Hunter's deposition testimony was equivocal as to one point only. He stated his opinion that the 120 patent did not describe an

"impeller means" because it described no means for impulsion which was physically attached to the sprinkler head. The 120 patent employed a metal ball which was moved radially by water pressure in the system to the point at which it made contact with a lug appended to the underside of the sprinkler head. Each striking moved the head to some degree, after which the ball, having lost momentum, dropped, to be again given momentum by the effect of water pressure.

Since the reference in claim 12 to impeller means is broad enough to encompass every means of impulsion, plaintiff wisely abandoned any claim of distinction over the 120 patent in that regard.

izes that language as describing a sealing means, where the means is located, and its function. It argues that, as so interpreted, the sealing element is not described in the 120 patent. By what logic? Because, under plaintiff's theory, the stressed word "for," relating to function, brings section 112 into play to require that distinguishing language from the specification be read into the claim to take the claim outside the 120 disclosures.

■ Plaintiff's position is untenable. Courts which have considered the issue have uniformly held that the "means-plus-function" proviso of the last paragraph of Section 112 does not override the Section 112 requirement that claims shall be drawn "particularly pointing out and distinctly claiming the subject matter" of the invention. A claim can be neither broadened nor limited by reading the specification into the claim.

The landmark decision is *Application of Lundberg*, 244 F.2d 543 (C.C.P.A.1957), the first definitive decision following the adoption of the functional clause of Section 112. The court said that the functional provision was intended to disavow certain decisions which had held that any functional reference within a claim invalidated the claim, per se. It said that the liberalizing language was not intended by Congress to destroy the basic concepts of patent law, prime among which are the premises that the claim is the measure of the invention and the requirement that the applicant particularly point out and distinctly claim the subject matter which he regards as his invention. It further said that resort to the last paragraph of 112 could not cure the fatal defect of language of a claim which reads directly of a prior art reference. "Limitations in the specification not included in the claim may not be relied upon to impart patentability to an otherwise unpatentable claim." 244 F.2d at 547–548.

■ Given the basic validity of a claim as drawn by the patentee, reference may be had to the specification to ascertain the structure of certain means asserted in the claim. However, the means-plus-function language does not create any exception to the rigid descriptive and definitive requirements of Section 112. *Application of Knowlton*, 481 F.2d 1357, 1366 (C.C.P.A. 1973). An otherwise unpatentable claim cannot be rendered patentable merely by stating the results obtained from using the recited structure. The particular feature or fact upon which patentability is predicated, must not only be disclosed in the specification but must also be clearly stated in the claim. *Application of Wright*, 256 F.2d 583, 589 (C.C.P.A.1958). A deficient claim cannot be aided by reading into it parts of other claims or the specification. *Winslow Manufacturing Co. v. Peerless Gauge Co.*, 202 F.Supp. 931, 935 (N.D.Ohio 1958). When the function clause in a claim fails to recite a necessary limitation to render the claim valid, a court may not resort to the specification to make that limitation a part of the claim. *Application of Edwards*, 285 F.2d 811, 812–813 (C.C.P.A.1961); *Application of Sporck*, 386 F.2d 924, 928 (C.C.PA. 1967); *Application of Margaroli*, 318 F.2d 348, 351 (C.C.P.A.1963).[6]

The asserted claims are unambiguous. They include a sealing means to prevent fluid from passing between the housing and the nozzle while permitting the free flow of fluid through the passageways in the nozzle itself. The 120 patent describes a sealing means which is designed to accomplish the same result. If the structure of his sealing means was a critical measure of Hunter's inventive concept, it was incumbent upon him to particularly point out and distinctly claim that structure. He failed to do so. As drawn, the asserted claims read directly upon the 120 patent.

**6.** The line of decisions, beginning with *Lundberg*, merely reaffirm principles of patent law established before the 1952 enactment. *E. g.*, *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 336 U.S. 271, 69 S.Ct. 535, 93 L.Ed. 672 (1949); *Borg-Warner Corp. v. Mall Tool Co.*, 217 F.2d 850, 855, 856 (7th Cir. 1954), *cert. denied*, 349 U.S. 946, 75 S.Ct. 875, 99 L.Ed. 1272.

The motion must be allowed and summary judgment must be entered for the defendant and against the plaintiff, declaring the subject claims of the patent in suit to be invalid.

Accordingly, IT IS ORDERED that judgment enter in favor of the defendant, at plaintiff's cost, and declaring claims 12, 14 and 15 of United States Patent # 3,854,664 to be invalid.

