**Donald A. HOLLEY, Plaintiff-Appellee,**

v.

**OUTBOARD MARINE CORPORATION,**
**Defendant-Appellant.**

**No. 14678.**

United States Court of Appeals
Seventh Circuit.

April 28, 1965.

Rehearing Denied June 1, 1965.

Jerome F. Fallon, Chicago, Ill., S. L. Wheeler and Robert E. Clemency, Milwaukee, Wis., Timothy L. Tilton, Chicago, Ill., Wheeler, Wheeler & Wheeler, Milwaukee, Wis., Dawson, Tilton, Fallon, Lungmus & Alexander, Chicago, Ill., of counsel, for appellant.

Charles B. Spangenberg, Sidney Wallenstein, Chicago, Ill., Wallenstein, Spangenberg & Hattis, Chicago, Ill., Leslie & Leslie, Waverly, Iowa, of counsel, for appellee.

Before DUFFY and KILEY, Circuit Judges, and GRUBB, District Judge.

DUFFY, Circuit Judge.

This is a suit for patent infringement. Plaintiff is the owner of United States Patent No. 2,536,642, issued January 2, 1951, for "Method of and Means for Controlling the Coolant of Marine Internal-Combustion Engines." Claim 3 of the patent is the only claim here in issue.

Plaintiff is engaged in the manufacture and sale of thermostatic controls and thermostats. Defendant is the manufacturer of various products including outboard motors and other marine engines.

The patent in suit relates to a marine engine cooling system which utilizes a water by-pass line. By stipulation, the alleged infringement of Claim 3, was in defendant's 5½, 10 and 18 horsepower outboard motors for the model years 1959, 1960, and several months of 1961.

Defendant denied infringement and alleged that Claim 3 was invalid, 1) for failure to claim an invention within the meaning of 35 U.S.C. § 112, 2) because anticipated by the prior art, and 3) as unpatentable for lack of invention over the prior art, as exemplified by three prior patents.

Marine cooling systems are constructed with the danger in mind that fire might result from overheated exhaust manifolds and pipes. It was earlier thought necessary to maintain a constant flow of water through the exhaust pipe. Prior to the date of plaintiff's invention, the typical marine engine cooling system involved only the pumping of water from the source (a body of water in which the boat is floated), directly through the engine water jacket and thence through the exhaust pipe. As the trial court pointed out, because of the absence of any provision for the retention of water in the water jacket until a desirable engine operating temperature had been reached, the engine would, at first, run cold and fail to vaporize the fuel properly. By contrast, in automobile engines, the problem of inflammable gas accumula-

tion is not present, and the exhaust manifold and pipe are air-cooled.

The problems facing plaintiff were the divergent requirements for: 1) a continual flow of water through the exhaust pipe for cooling purposes; 2) sufficient cooling water in the water jacket to avoid overheating of the engine, and 3) the capability of retaining water within the water jacket when it was sought to raise the engine temperature to a desirable operating level. These ends could not normally be obtained by the continual circulation of water through the water jacket.

Plaintiff's answer to the problems was to employ a feature of a recirculation system he had previously demonstrated, the retention of water within the cooling system until engine temperature was sufficiently high without a reduction in the flow of water overboard through the exhaust manifold and pipe. This was accomplished by the use of two lines into which the incoming flow of water could be directed. One line led through the water jacket, the other line by-passed it. As the trial judge pointed out in his opinion, water passing through the by-pass line had no effect upon engine temperature.

The flow of water was apportioned between the lines by the operation of an expandable thermostat which was located at the point of their juncture on the outlet side of the cooling system. When the engine was cold and the bellows contracted, a valve disc blocked the passage of water through the water jacket. The flow of water into the engine remained substantially the same so that the incoming flow largely went into the by-pass line. But, as the engine warmed up, the thermostatic valve directed increasing amounts of water through the water jacket. The total volume of water going through the cooling system was not affected by the apportionment of the water between the two lines.

After filing his patent application in September 1949, plaintiff contacted the Chris-Craft Corporation which was then and is now, a large builder of boats.

Plaintiff had been informed that Chris-Craft was opposed to the installation of any thermostatically controlled cooling system in marine engines, considering such systems to be unreliable. However, in 1950, plaintiff secured an order from Chris-Craft for 144 units which proved satisfactory. Subsequent orders were also received. In recent years, a majority of the larger six-cylinder Chris-Craft marine engines have been equipped with factory-installed temperature control systems of plaintiff's design.

In 1951, plaintiff contacted an Iowa agent of defendant company and installed his system on one of defendant's engines. Successful tests were made.

In November 1952, plaintiff contacted defendant's chief engineer in Waukegan, Illinois, and left with him drawings and a description of his invention. The engineer told plaintiff that the defendant was experimenting with a system but indicated a purchase from plaintiff would be considered if their own system proved to be unsuccessful.

On October 2, 1953, defendant's Director of Research, Watkins, submitted a sketch and suggested the development of a by-pass system. On April 10, 1956, Patent No. 2,741,231 was issued to Watkins. This patent was assigned to defendant. Shortly before trial, defendant disclaimed the Watkins patent.

On September 8, 1959, plaintiff gave defendant a notice of infringement. Although defendant denied infringement, it made certain changes in its temperature control system in late 1960 and early 1961.

In this case, the trial judge filed detailed findings of fact and conclusions of law which he prepared. He also filed an opinion which demonstrates that he had a clear understanding of the issues involved in this case. He found Claim 3 of the patent in suit to be valid and infringed. He also denied leave for defendant to file a second amended complaint and held that plaintiff has not misused the patent in suit.

In defendant's brief, it is asserted that "a number of findings are believed to be without support whatever in the evidence." Defendant has not specifically pointed out to which findings it has referred. However, we do not think any of the findings of fact are clearly erroneous but, on the contrary, are supported by substantial evidence.

We think the District Court was correct in holding that differences in the operation and purpose between automobile and marine cooling systems, are so substantial that patents cited by defendant pertaining to automotive systems [1] do not anticipate the patent in suit.

One of the objects of automotive cooling systems is to prevent the freezing of the cooling medium used therein. The automotive system is a closed system including a fan controlled radiator, an engine water jacket with a non-self priming paddle wheel type of pump for the circulation of the water. The circulating pump of an automotive internal combustion engine cooling system is not satisfactory or practical for use in a marine internal combustion engine cooling system The District Court so found and substantial evidence sustains that finding.

As of 1949, marine internal combustion engines generally did not employ thermostatically controlled cooling systems, in spite of the long-felt need for such a system.

The other patent principally relied upon by defendant is Morgan Patent No. 2,471,533. This patent does refer to a marine engine cooling system. However, in the Morgan patent, two cooperating valves are used. The first valve which is thermostatically operated, controls or blocks the flow of water through the engine water jacket. The second valve is pressure-operated and releases water from the system only when the other valve is in a closed position. We agree with the District Court that the operation of the thermostatic valve, in affecting water pressure within the cooling system, clearly distinguishes its function from the single valve in plaintiff's system.

The simplicity and efficiency of plaintiff's system clearly represented an advance or improvement over previous devised systems. It was recognized by the trade as having high merit. In spite of Chris-Craft's previous strong opposition to a thermostatically controlled system, they became converted and used plaintiff's system.

For reasons stated in the opinion of the District Court which need not be repeated here, the operation of the valve in plaintiff's system does not affect the total water flow. As with the accused system, the flow through the exhaust pipe remains substantially constant.

In view of findings of fact 5, 8, 9, 10 and 40, and the specifications and drawings of plaintiff's patent in suit, Claim 3 should be construed as being directed and limited to a cooling system for a marine internal combustion engine having a water jacket. Defendant cannot properly broaden the claim to encompass the entirely different automotive internal combustion engine cooling system of the Giesler and Rayfield patents.

We hold the District Court was correct in concluding that the Morgan, Giesler and Rayfield patents, singly or in combination, did not anticipate plaintiff's patent and render it obvious. Plaintiff's system was not obvious to others skilled in the trade.

█ We hold the trial court properly found the invention of plaintiff's patent in suit was not anticipated by or described in any of the prior art. We think the trial court applied the correct legal criteria of 35 U.S.C. § 102, and properly concluded that Claim 3 of plaintiff's patent in suit is valid.

We likewise agree with the District Court's conclusion that Claim 3 of the patent in suit is not functional.

---

1. The Rayfield Patent No. 1,528,788, issued March 10, 1925, and the Giesler Patent No. 1,561,153, issued November 10, 1925.

There remains only the issue presented by defendant that plaintiff has misused the patent in suit and hence Claim 3 is not enforceable. This defense has to do with the relationship between plaintiff and Chris-Craft Corporation.

In early 1952, Chris-Craft requested plaintiff to tailor his patented system to their marine engines in order to improve the appearance of the installations and to eliminate some of the external plumbing. Plaintiff did redesign the manifold of the Chris-Craft marine engines to incorporate his by-pass line, and he also designed special housings for use with the redesigned manifolds, and for the incorporation of his thermostatic control assemblies therein.

The District Court found that an understanding was reached between plaintiff and Chris-Craft Corporation in regard to sales to and use by Chris-Craft of thermostatically controlled assemblies, the temperature control unit and specially designed housings. The price fixed was a negotiated price. By the terms of the agreement, Chris-Craft Corporation is not required to purchase thermostatic control assemblies from plaintiff in order to obtain a license under the patent in suit. When Chris-Craft Corporation purchases plaintiff's thermostatic control for the royalty of $1 (which is included in the purchase price), it obtains the right to build the specially designed housing and the right to use plaintiff's temperature control. The trial court found that for the purposes of business convenience, the royalty is included in the purchase price.

Plaintiff operates a small one-man concern with gross sales of about $7,000 annually. His bookkeeping is, apparently, as simple as possible. There is no evidence that there are available in commerce thermostatic control assemblies which can be incorporated in the the redesigned housings manufactured by Chris-Craft.

We do not think there is anything about the relationship between plaintiff and Chris-Craft Corporation that spells out misuse of the patent in suit.

The judgment of validity of the patent in suit and of infringement of Claim 3 of that patent by defendant is

Affirmed.