**REYNOLDS METALS COMPANY,
Plaintiff-Appellee,**

v.

**ALUMINUM COMPANY OF AMERICA, a Corporation, and National Can Corporation, a Corporation, Defendants-Appellants.**

**Nos. 78–1909, 78–1910.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 16, 1979.

Decided Nov. 13, 1979.

Rehearing and Rehearing En Banc Denied Jan. 17, 1980.

Robert E. Isner, New York City, Walter J. Blenko, Jr., Pittsburgh, Pa., for defendants-appellants.

John W. Malley, William T. Bullinger, Washington, D. C., for plaintiff-appellee.

Before SWYGERT and BAUER, Circuit Judges, and GRADY, District Judge.*

BAUER, Circuit Judge.

In this civil action, the Reynolds Metals Company charged Alcoa and National Can with infringement of U.S. Patents 3,691,972 and 3,814,590. These patents—known as the "Bylund" patents—deal with the manufacture of twelve ounce aluminum cans for beer and soft drinks. The lower court awarded judgment to Reynolds, and Alcoa and National Can now appeal.

## I

To understand fully the issues presented in this appeal, we must first define some key concepts in the manufacturing of aluminum cans. The process of fabricating aluminum sheet involves the casting of molten aluminum into an ingot, which is then squeezed between rollers to reduce the thickness of the metal. This rolling process is repeated as often as is necessary to achieve the desired thickness, and is commonly referred to as "working" the metal. If the rolling of the aluminum is done at a high temperature, it is known as "hot working," and if it is done at room temperature, it is known as "cold working." When the gauge of the aluminum is reduced by "cold working," the strength of the metal increases, and it is said to be "work-hardened." The strength of work-hardened aluminum can be reduced, however, by "annealing"—that is, by heating it to a temperature at or above the recrystallization temperature.

Alloys of aluminum are generally designated by four digit numbers which identify the principal alloying elements and permissible percentage ranges in the alloy. Two common alloys which were well-known (and commercially available) for years prior to the patent at issue are "3003" and "3004." The principal alloying elements in these two types are manganese (from 1.0 and 1.5%) and iron (up to 0.7%). 3004 also includes magnesium from 0.8 to 1.3%.

The temper of aluminum sheet is conventionally designated by letters and numbers which follow the alloy designation. Work-hardened aluminum is identified by the letter "H." The first digit following the letter indicates whether or not the metal has received any heat treatment: "1" indicates that the metal has been work-hardened only; "2" indicates that the metal has been work-hardened and partially annealed; and "3" indicates that the metal has been work hardened and fully annealed. The second digit designates the amount of work-hardening, with "8" representing "full hard," "4" representing "half hard," and so on. Accordingly, "3004–H18" is 3004 alloy which has been cold worked to full hard condition. It should also be noted that H–18 temper is defined only by a minimum specified strength—there is no maximum and thus no range. If the minimum strength is raised slightly, the temper is known as H–19, but it is necessary to roll metal through H–18 temper to reach H–19 temper.

Finally, the actual manufacture of containers from aluminum sheet involves two processes. The first—so-called "drawing" —transforms a flat sheet of aluminum into a three-dimensional shape without appreciable change in the thickness of the aluminum. The second—so-called "ironing"— forces the cup through a die in order to form a deeper container with a thinner sidewall.

## II

The crucial issue in this appeal is whether the Bylund patents are invalid for lack of

---

* The Honorable John F. Grady of the United States District Court for the Northern District of Illinois is sitting by designation.

novelty under 35 U.S.C. § 102.** In essence, the patents are asserted to cover the manufacture of beverage cans by drawing and ironing "highly cold worked" aluminum alloys, e. g. 3004–H19. The lower court identified two significant differences between the patents and the prior art:

(1) the elimination of annealing or stress relieving in making D & I aluminum cans; and

(2) selecting alloying elements of sufficient ductility and strength to cold roll and draw iron the aluminum sheet into a can body without thermal treatments.

*Reynolds Metals Co. v. Aluminum Co. of America*, 457 F.Supp. 482, 495 (N.D.Ind. 1978).

From our review of the evidence, however, we are persuaded that everything claimed by the Bylund patents was fully disclosed in the prior art, particularly the work of the Metal Flo Corporation. The evidence shows that prior to the Bylund patent, Metal Flo had drawn and ironed aluminum cans without annealing from highly cold worked material, having selected alloying elements with sufficient ductility and strength to be cold rolled drawn and ironed into a can body without thermal treatment. In particular, Metal Flo sold several thousand containers (sonobuoy housings) which it had manufactured by drawing and ironing 3003–H19 aluminum alloy without annealing or thermal treatment. In addition, Metal Flo manufactured and delivered to Reynolds drawn and ironed twelve ounce beer cans made from various Reynolds-supplied alloys, including 3004 in tempers up to H–18.

■ The district court disregarded the evidence of Metal Flo's work, apparently on the grounds that Metal Flo had never developed a commercial success in *beer* cans. The court thus characterized Metal Flo's

work as "incomplete, experimental and abandoned." 457 F.Supp. at 482. The unrebutted evidence shows, however, that Metal Flo did indeed operate commercially as to products such as the sonobuoy housings. And while it is true, as Reynolds argues, that this commercial use of the process involved products other than beer cans, the process is nevertheless anticipatory, for the differences are in dimension only. As this court stated in *Popeil Bros., Inc. v. Shick Electric, Inc.*, 494 F.2d 162, 165 (7th Cir. 1975):

The issue of anticipation by prior art is not determined by insubstantial distinctions between a purported invention and prior art. A purported invention is anticipated by prior art 'if the general aspects are the same and the difference in minor matters is only such as would suggest itself to one of ordinary skill in the art.'

In our view, the dimensional differences between Metal Flo's work and the Bylund patents would indeed suggest themselves to one of ordinary skill in the art.

Finally, we note that we find no significance in Metal Flo's subsequent financial difficulties, its unconventional or antiquated equipment, and its inability to achieve a high rate of production. All of these matters, it seems to us, are immaterial to the patent claims at issue in this case.

■ We must therefore conclude that the district court reversibly erred in failing to invalidate the Bylund patents for lack of novelty under 35 U.S.C. § 102. The judgment of the district court is REVERSED.

■

** 35 U.S.C. § 102 provides in pertinent part:

A person shall be entitled to a patent unless—

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States . . . ."