SARGENT–WELCH SCIENTIFIC COMPANY, Plaintiff,

v.

J/B INDUSTRIES, INC., Defendant.

No. 78 C 4363.

United States District Court, N. D. Illinois, E. D.

Sept. 29, 1980.

John L. Alex, Gary W. McFarron, Lockwood, Dewey, Alex & Cummings, Chicago, Ill., for plaintiff.

Michael S. Walsh, John W. Chestnut, Tilton, Fallon, Lungmus & Chestnut, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Defendant J/B Industries, Inc. ("J/B") has moved for summary judgment in this patent infringement action brought by Sargent–Welch Scientific Company ("Sargent–Welch"). For the reasons stated in this memorandum opinion and order, this Court finds certain claims of the patent in suit to be non–actionable on grounds of anticipation (35 U.S.C. § 102(b)) and obviousness (35 U.S.C. § 103) but denies J/B's motion for summary judgment.

### Facts

Sargent–Welch owns all rights in a claimed 1971 invention embodied in Patent No. 3,782,868 (the "LeBlanc patent" or "Le-Blanc")[1], entitled "Rotary Vane Pump" (the "LeBlanc pump"). The LeBlanc pump is designed "for use in drawing vacuums" and is marketed by Sargent–Welch as a device to remove water vapor and contaminants from refrigeration and air conditioning systems.

J/B sells a materially identical device, marketed for the same purposes. Its only defense relevant for purposes of this opinion is that all the claims of the LeBlanc patent are invalid under 35 U.S.C. §§ 102(b)

---

1. Inventor Joseph LeBlanc, Jr. had assigned the invention to Componetrol, Inc., prior to the patent's issuance in 1974. Componetrol assigned the patent to Sargent Welch in 1977.

and 103[2] by reason of a single prior art patent, No. 3,040,973 (the "Wessling patent" or "Wessling")[3] entitled "Vacuum Pump" (the "Wessling pump"). J/B's motion for summary judgment is predicated on those grounds.

Pumps disclosed by Wessling and LeBlanc are quite similar in appearance and operation. Each involves a dual pumping chamber vacuum device, in which two rotors that extend through the chambers compress gas to create a vacuum.

Sargent–Welch and J/B do not disagree on this basic similarity. However, two mechanical differences between the Wessling and LeBlanc pumps are at issue.[4]

First, both pumps are encased by an oil reservoir, from which oil enters the second pumping chamber through an exhaust bore or port (LeBlanc) or outlet port (Wessling). Oil in the second chamber serves to lubricate the pump and to capture contaminants and water vapor during the vacuum process. Entry of the oil into that chamber is regulated by a "reed" (LeBlanc) or check valve (Wessling) secured to the top of the second stage stator (the metal casing that surrounds the second pumping chamber), which fluctuates with the pumping cycle.

LeBlanc features a "step" (a very slight indentation in the surface of the stator) at the point of the exhaust bore. With the step, even when the reed is fully pressed against the surface of the stator during the suction cycle, a small opening in the exhaust bore remains, allowing a continuous flow of oil into the second chamber.

In the Wessling pump the check valve is separated from the stator during the cycle by a "spacer" (an additional piece attached to the top of the stator at one end of the valve) rather than a step. However, the spacer does not keep the outlet port open at all times for the influx of oil; during a portion of the operating cycle when the valve is pressed fully against the surface of the stator, the port is completely sealed and no oil enters the second chamber.

In practical terms, the difference between the two systems is substantial, a conclusion J/B does not contest. By producing an improved oil flow, the LeBlanc pump facilitates industrial uses to which the Wessling pump is not adaptable, because the more "generous" flow of oil allows the pump to capture greater amounts of contaminant without excess wear and breakdown. In contrast, the more limited oil flow of the Wessling pump is particularly suitable for laboratory use where the contaminant level is lower and noise reduction, apparently a feature of the Wessling pump as a result of the outlet port being sealed during a portion of the pumping cycle, is a significant factor.

There is a second contested mechanical difference between the two pumps: the way in which the drive motor of each pump is connected to and operates the pump itself. Under LeBlanc the motor is positioned directly beside the pump, facilitating its operation by means of a direct drive shaft "connected" to both the pump and the motor. In Wessling the motor is positioned in front of the pump and the output shaft, connected only to the pump, is turned by a

---

2. Section 102(b) involves the defense of anticipation by the prior art patent. J/B also claims that even if LeBlanc were not anticipated by the prior patent, it was an "obvious" modification of the prior art and thus invalid under Section 103.

3. Inventor Kenneth Wessling filed the prior art application in 1958. At the time of the patent's issuance in 1962 the invention had been assigned to Precision Scientific Company.

4. J/B challenges the validity of each of *four* claims in LeBlanc, but only the two "differences" discussed below are contested by Sargent–Welch. Section (i) of Claim 1 describes

the first device at issue here; Sargent–Welch apparently concedes that the other devices described in Claim 1 were anticipated. Claim 2 describes a two–stage vacuum pump. Wessling also described a two–stage vacuum, and thus Claim 2 of LeBlanc appears to have been anticipated. Sargent–Welch does not contest that conclusion in its briefing. Claim 3 deals entirely with the second contested device or difference discussed below. Claim 4 merely elaborates on the contested Section (i) of Claim 1, and accordingly the two are treated as one issue for purposes of this opinion.

belt that runs between the motor and the pump. Sargent–Welch claims its "direct–drive" motor feature makes the LeBlanc pump more compact and convenient than the Wessling pump, and since it has mechanical dynamics different from a "typically slower" belt–driven pump, it may allow use of smaller pumping chambers.

## Discussion

### 1. The LeBlanc Reed and Second Stage Stator Step

Plaintiff claims that the LeBlanc reed and second stage stator step (collectively the "reed"), which allow a continuous flow of oil into the second pumping chamber, constitute a means embodied in Claims 1(i) and 4 of LeBlanc and that J/B has infringed those claims. J/B contests the validity of those claims on three grounds:

1. Claims 1(i) and 4 do not describe the non–closing feature of the reed, and that feature is accordingly not within the scope of the patent's protection.

2. Even if that feature is described in LeBlanc, it was anticipated by Wessel and thus is unpatentable under 35 U.S.C. § 102(b).

3. Even if the LeBlanc reed is not anticipated by Wessling, it is an obvious and therefore unpatentable modification of Wessling under 35 U.S.C. § 103.

### A. The Text of Claims 1(i) and 4

■ Claims 1(i) and 4 describe the "reed" whose patentability is at issue here:

1. i. a noise suppressor associated with said outlet comprising a flexible reed exterior of said chamber and within said reservoir adjacent said outlet and separated therefrom by a small gap, said small gap being defined by a relieved step in said block at least partially encompassing said opening, said reed being secured to said block remote from said opening and having a free end overlying said opening.

---

**5.** Under Patent Office Rule 77 the "Summary of the Invention" (where the quoted language ap-

4. the vacuum pump of claim 1 wherein said relieved step only partially encompasses said opening.

It appears that the text of those claims, read alone, does not expressly set forth the feature Sargent–Welch asserts to be patentable: the fact that the reed never completely closes off the outlet leading into the pumping chamber. J/B argues that the feature is therefore unprotected, because only the claims of a patent measure its grant. *Popeil Bros., Inc. v. Schick Electric, Inc.*, 356 F.Supp. 240, 252 (N.D.Ill.1972), aff'd 494 F.2d 162 (7th Cir. 1975).

J/B's argument ignores the teaching of *United States v. Adams*, 383 U.S. 39, 49, 86 S.Ct. 708, 713, 15 L.Ed.2d 572 (1965), in which the Supreme Court noted that although "the claims of a patent limit the invention . . . *it is fundamental that claims are to be construed in light of the specifications and both are to be read with a view to ascertaining the invention*" (emphasis added). That concept has been interpreted in this Circuit to allow use of the specifications (and file wrapper) to interpret a patent claim that is ambiguous. See *Super Products Corp. v. D. P. Way Corp.*, 546 F.2d 748, 757 (7th Cir. 1976).

As to the issue involved in this case, Claims 1(i) and 4 must be viewed as ambiguous. Claim 1(i) states that the reed and outlet are separated by a small gap "being defined by the step." Claim 4 states that the step only partially encompasses the opening. These statements are ambiguous as to whether the reed ever fully closes the outlet. Accordingly, under *Adams* and *Super Products* it is appropriate to refer to the LeBlanc specifications to "ascertain the invention" described.

In describing the reed's operation during the pumping cycle, the LeBlanc specifications [5] explicitly describe the feature of the pump at issue here:

The reed may move away from the outlet during the expulsion of gas and serves to suppress the noise of the same during that time while moving toward the outlet

pears) constitutes part of the specifications. See, *Deller*, 5 Walker on Patents § 444 (1972).

*but not closing the same* during a subsequent portion of a pumping cycle to permit the inflow of oil into the pumping chamber without significant noise. (emphasis added)

Accordingly it is the Court's opinion that the "step" feature and its operation in the LeBlanc pump are sufficiently described so that they may be examined for patentability against the standards of anticipation and obviousness.

## 2. The Anticipation Defense

 J/B asserts that even if LeBlanc is read to embody the reed feature, that feature is an insubstantial modification of Wessling and therefore was "anticipated" by Wessling under 35 U.S.C. 102(b):

A person shall be entitled to a patent unless—

(b) the invention was patented or described in a printed publication in this or a foreign county . . . more than one year prior to the date of application for the patent.

This Circuit's leading case on the standard to be applied in anticipation challenges is *Popeil Brothers, Inc. v. Schick Electric, Inc.*, 494 F.2d 162, 164 (7th Cir. 1974):

In essence Section 102(a) requires that a method or device, in order to be patentable, be novel. Under the statute such novelty is lacking where a purported invention has been anticipated . . . A previous patent . . . anticipates a purported invention only where, except for insubstantial differences, it contains all of the same elements operating in the same fashion to perform an identical function.

J/B's claim of anticipation rests entirely on a portion of the textual description of the reed's operation in each patent. Specifically, J/B notes that the following passages describe equivalent and therefore indistinguishable operations:

As a result, a small space defined by the height of the step 118 exists between the outlet 116 and the reed 120 which permits a slight influx of oil from the reservoir into the pumping chamber 58 for a short period after vein 68 moves past the exhaust port 114 toward the inlet port for lubrication purposes while suppressing noise during the remainder of the stroke when gas is expelled through the port 116. [LeBlanc, column 4, lines 8–15]. The high efficiency of the valve is particularly surprising in view of the fact that it includes what may be termed a "built-in leak." That is to say, when the leak springs occupy the normal, unstressed position illustrated in FIG. 6, the gap 106 provides sufficient area for substantial leakage of oil into the port 78. During the portion of the operating cycle when the pressure within the port 78 is at or only slightly below atmospheric pressure, the vacuum is not sufficient to overcome the spring force to effect closure of the valve. Consequently, oil is sucked through the gap and down into the second stage of pump. The oil which is thus drawn in effectively seals the rotor to the stator so that there is no leakage or bypassing of air from outlet to inlet. [Wessling, column 5, lines 11–25].

Whatever similarity may exist between the portion of the operations described in the two quotations, the appropriate comparison would properly seem to be that of the *entire* description of each patent's operation rather than that of isolated passages. Accordingly, the LeBlanc description quoted in Section 1 of this opinion (which noted that the outlet is never fully closed by the reed) must be considered in this determination. So too must be the following passage from Wessling (column 5, lines 48–51), which states that the port is completely closed during a portion of the Wessling operation:

As the vacuum in the port 78 increases, both of the springs 101, 102 are drawn down so tight into contact with the land 79 so that no further oil can enter.

All these passages indicate that the operation of the reed in the LeBlanc patent is not identical to that of the check valve in the Wessling patent. What remains to be resolved is whether the differences are so insubstantial that the two mechanisms are "equivalents," and that determination is

one of fact. *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, .339 U.S. 605, 609, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950).

Thus in order for J/B to prevail at this juncture, it must satisfy the requirement of Fed.R.Civ.P. 56 that there be "no genuine issue as to any material fact and that [J/B] . . . is entitled to a judgment as a matter of law." With respect to the "insubstantiality" of the difference between the LeBlanc step and the Wessling spacer, J/B has submitted only the patents themselves. Sargent–Welch challenges J/B's conclusion that the patents conclusively demonstrate the difference to be insubstantial. Sargent–Welch also submits the Affidavit of David E. Hanson, its Chief Engineer of Mechanical Pumps, asserting the functional differences between the two pumps.[6] In view of the material differences in function,[7] this Court holds that the patents do not establish "insubstantial difference" as a matter of law.

### 3. *The Obviousness Defense*

■ Finally J/B contends that even if the LeBlanc reed/step were not anticipated by the analogous device in Wessling, it is an "obvious" modification and therefore unpatentable under 35 U.S.C. § 103:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth. in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject

matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

J/B has failed to submit any demonstration as to the "ordinary skill in the art" requirement of the statute. In *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1965), the Supreme Court described obviousness under Section 103 as a three–part test:

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of the ordinary skill in the pertinent art resolved.

That language would appear to cause Sargent–Welch also to prevail on the obviousness issue, at least against a motion for summary judgment.[8] However, we must also consider the teaching of *Research Corp. v. NASCO Industries, Inc.*, 501 F.2d 358, 361 (7th Cir.), *cert. denied*, 419 U.S. 1096, 95 S.Ct. 689, 42 L.Ed.2d 688 (1974), that there may be circumstances in which reference to the level of skill in the pertinent art is unnecessary:

> The differences between the method there disclosed and the claimed invention are plainly discernible from the documents . . . A full trial, for the sole purpose of hearing expert testimony on the level of ordinary skill in the art, could not have aided the court in resolving the

**6.** Before this action was brought Sargent–Welch offered to accept any design change in the J/B pump that would cause it to read on the Wessling claims and not LeBlanc–that is, that would close the outlet at some point of the pumping cycle. J/B's rejection of that proposal as an alternative to litigation, though of course not conclusive, creates an inference supporting the conclusion that the "substantiality" of the difference poses at least a genuine issue as to a material fact.

**7.** Where a difference between two patents is ascertainable, courts are most reluctant to grant summary judgment as to Section 102 (anticipation). See, e. g., *AMP Inc. v. Bunker Ramo Corp.*, 197 U.S.P.Q. 200, 205 (N.D.Ill. 1977), *modified*, May 18, 1978 (unpublished opinion), *rev'd on other grounds*, 604 F.2d 24

(7th Cir. 1979), in which the Court held that although the defendant might prevail on the issue of anticipation at trial, "the functional significance of these [demonstrated] differences is a question of fact which cannot be determined on a motion for summary judgment."

**8.** This Court is not unmindful of the well established principle that obviousness is a question of law. *See, e. g. Pederson v. Stewart–Warner Corp.*, 536 F.2d 1179, 1180 (7th Cir. 1976). However, as *Pederson* acknowledges, the factual determinations mandated in *Graham* must be made before an obviousness issue is resolved. Accordingly, summary judgment is not appropriate where a material issue remains as to any of those factual questions.

legal question of obviousness, and the court could properly rule on that issue "without the taking of testimony from experts in the pertinent area of knowledge."

*Research Corp.* was explained in *Lee Blacksmith, Inc. v. Lindsay Brothers, Inc.*, 605 F.2d 341, 344 (7th Cir. 1979):

> The gist of our holding in that case is that if the differences between the patent in suit and the prior art are such that the subject matter as a whole is obvious to a layman, a determination of the level of skill on the basis of expert testimony in the pertinent art would be useless. What is obvious to a layman would certainly be obvious to one skilled in the art to which the subject matter pertains.

It cannot be concluded as a matter of law that the LeBlanc modification would have been "obvious to a layman" cognizant of the Wessling design. Even assuming that a person skilled in the art were to have addressed himself to the problem of developing a pump to meet different and more demanding uses, with Wessling before him, it is scarcely unquestionable that he would have found the LeBlanc principle (involving a change in the structure of the reed and a precision alteration in the surface of the stator) an "obvious" modification. Hindsight is always tempting in the patent field.[9] At a minimum the question of obviousness poses a genuine issue of material fact. J/B has not satisfied its burden as established by *Research Corp.* and *Lee Blacksmith, Inc.*,[10] and summary judgment based on Section 103 must be denied.

### 4. The LeBlanc Direct–Drive Motor

■ Claim 3 of LeBlanc embodies its direct–drive motor design, but an obvious typographical error in its text renders the claim meaningless when read literally:

> The pump of claim 1 wherein said means for rotating said motor [sic] comprises a motor having a rotary outlet shaft directed along said axis.

In order to make sense of and properly describe plaintiff's claim, the first use of the word "motor" should of course be "rotor." J/B's principal contention is that Sargent–Welch must accept the claim as it is transcribed, since it failed to correct the error under 35 U.S.C. § 255. Accordingly, since the claim is "meaningless" as written, J/B argues it cannot form the basis for an infringement action as a matter of law.

J/B's contention in that respect may be fully disposed of by reference to the relevant LeBlanc specifications, under the principles outlined in Section 1 of this opinion. Because the text of Claim 3 is ambiguous, the specification (column 2, lines 6–10) may (and plainly does in this instance) serve to "ascertain" the invention:

> A unique arrangement of securing the motor to the pump housing and portions of the pump housing together permit the pump rotor to be directly connected to the output shaft of the motor for direct drive thereby eliminating any need for gear trains or the like . . . .

■ Thus J/B's first argument as to Claim 3 must be rejected. However, it also asserts that "There is nothing unobvious about having the drive shaft of the motor aligned with the axis of the rotor" (in contrast with the belt–driven arrangement depicted in Wessling).

Sargent–Welch responds only that the direct drive creates a "convenient and portable unit" with "different mechanical dynamics," because a belt–driven unit is "typically slower and may require larger pumping chambers." But superiority of product or result has never been the standard of patentability. From the limited presentation to the Court as the "layman" referred to in the Seventh Circuit decisions, it appears that such an adaptation would be "obvious to one skilled in the art," so that summary judgment in favor of J/B is appropriate as to Claim 3 under *Research Corp.* and *Lee Blacksmith.*

---

**9.** "That's so simple. Why didn't I think of it?"

**10.** Those cases, in which summary judgment on Section 103 claims was granted, involved facts plainly distinguishable from those in this case. Intricate mechanical operations of the vacuum pump cannot be compared meaningfully with the much less complex devices in those cases.

*Conclusion*

For the reasons stated in this opinion, this Court finds that:

1. Elements (a)–(h) of Claim 1 of Le-Blanc were anticipated by Wessling.

2. There are genuine issues of material fact as to whether element (i) of Claim 1 of LeBlanc was anticipated by Wessling and as to whether the differences between LeBlanc's subject matter and that of Wessling would have been obvious to a person having ordinary skill in the art.

3. Claim 2 of LeBlanc, except to the extent indicated by the preceding finding, was anticipated by Wessling.

4. Claim 3 of Le Blanc was not identically described in Wessling, but its difference from Wessling was such that it would have been obvious to a person having ordinary skill in the art.

5. Claim 4 of Le Blanc presents genuine issues of material fact as to the same matters stated above regarding element (i) of Claim 1.

