NATIONAL BUSINESS SYSTEMS,
INC., et al., Plaintiffs,

v.

AM INTERNATIONAL, INC., Defendant.

NATIONAL BUSINESS SYSTEMS,
INC., et al., Plaintiffs,

v.

AM INTERNATIONAL, INC., et
al., Defendants.

Nos. 80 C 4915, 81 C 6227.

United States District Court,
N. D. Illinois, E. D.

Aug. 26, 1982.

 

 
 
 
 

 
 
 
 
 
 

 

 
 
 
 
 

 

 
 
 
 
 

 
 
 
 
 

 
 
 
 
 

 
 

Edward S. Irons, Mary Helen Sears, Irons & Sears, Washington, D. C., for plaintiff.

Granger Cook, Jr., John R. Crossan, Cook, Wetzel & Egan, Ltd., and Robert C. Curfiss, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BUA, District Judge.

This is a declaratory judgment action seeking to have letters patent Nos. 3,272,-120 ("120 patent"), 3,340,800 ("800 patent"), and 3,763,777 ("777 patent") held invalid, unenforceable and/or not infringed by the manufacture and sale of NBS imprinter Models 710 and 750 and of NBS imprinter Models 305 and 2025. The defendants have counterclaimed alleging willful infringement of the same patents and imprinters.

This action was tried to the Court between April 13, 1982 and April 28, 1982.

I. *General Description of the Patents*

The '120 patent discloses and claims a data recorder using a two platen roller, two stroke (forward-return) method for imprinting forms from embossed printing plates or cards, such as are used in credit transactions in department stores and gas stations and in finance institutions with bank cards. The data recorder disclosed in the '120 patent has a dual platen roller arranged on a double eccentric shaft constituting a platen assembly which allows for selective imprinting of characters from the embossed plates or cards. A first platen roller is lowered and imprints on the form the first portion of characters as it rolls along the embossed plate or card, which is on the bed of the data recorder, in a left-to-right stroke of the platen carriage, which houses the platen assembly and is operated by hand. The first platen roller is then raised and a second platen roller is lowered to imprint the remaining portion of the characters as it rolls along the embossed plate or card in a right-to-left return stroke.

The '800 patent discloses and claims a data recorder using a two-platen, multiple (four) stroke method for selective imprinting of paper from an embossed printing device, such as is used in finance institutions for printing checks. The data recorder disclosed in the '800 patent has a dual platen roller arranged on a double eccentric shaft constituting a platen assembly which allows for high quality imprinting of MICR characters ("Machine Ink Character Recognition") when printing checks in accordance with American Bankers Association specifications for E–13B magnetic code. A first platen roller is lowered and imprints only one row of characters, the MICR characters, and then is raised for an idling return stroke. The second platen roller is lowered and imprints other than the one row of characters imprinted by the first platen roller, and then is raised for an idling return stroke.

The '777 patent discloses and claims a two-platen roller, two stroke method for

imprinting forms from embossed printing plates or cards, with independent means for adjusting the pressure applied by the two platen rollers. The data recorder disclosed in the '777 patent has two platen rollers mounted on separate shafts swinging independently, constituting a platen assembly which allows for selective imprinting of characters from a plastic credit card and a metal station or merchant plate. The first platen roller is lowered and imprints from the metal station or merchant plate in the right-to-left return stroke. This data recorder allows for each platen roller to print with different pressure, which is desirable since one roller imprints from a plastic credit card and the second roller imprints from a metal plate.

Patent No. 3,272,120 entitled "Address Printing Machines with Roller Platens" was issued on September 13, 1966, from an application filed October 22, 1964. It is assigned to the Addressograph-Multigraph Company, predecessor (by change of name) to AM International ("AM") in the name of Dean W. Johnson. An application for reissue of the '120 patent was filed on April 27, 1978, which was to mature as reissue Patent No. 30,470. The Patent Office rejected the 30,470 reissue application and the continuation application, Serial No. 275,764, was finally rejected on April 6, 1982. The rejection has been appealed to the Board of Appeals, by a paper filed April 12, 1981.

Patent No. 3,340,800 entitled "Dual Roller Platens in Address Printing Machines" was issued on September 12, 1967, from a continuation application whose parent original application was filed April 25, 1963. It is assigned to Addressograph-Multigraph Company in the names of John H. Gruver, Dean W. Johnson, and Lyle W. Seifried.

Patent No. 3,763,777 entitled "Independently Adjustable Multiple Data Recorder" was issued on October 9, 1973, from an application filed November 17, 1971. It is assigned to Addressograph-Multigraph Company in the name of Albert C. Brown.

## II. *The Parties, Jurisdiction and Venue*

The plaintiff, National Business Systems, Inc., a corporation of Ontario, Canada (NBS/Canada), has a principal office and place of business in Mississauga, Ontario, Canada.

Plaintiff, National Business Systems, Inc., a Delaware corporation (NBS/U.S.), is a wholly-owned subsidiary of NBS/Canada, having a principal office and place of business in Elmsford, New York, and, in addition, a place of business in Elk Grove Village, Illinois.

Plaintiff, Heinrich Marketing, Inc., is a Colorado corporation, having a place of business in Arvada, Colorado. Plaintiff George Heinrich is an individual residing in Arvada, Colorado, and is the sole owner of plaintiff Heinrich Marketing, Inc.

The defendant, AM International, Inc., is a Delaware corporation, having a principal place of business in Chicago, Illinois.

Defendant, Bartizan Corporation, is a New York corporation, having a principal place of business in Yonkers, New York, and is doing business within this judicial district.

Defendant, Lewis Hoff, is the president of the defendant Bartizan Corporation, residing in New York, New York.

Jurisdiction exists by virtue of 28 U.S.C. § 1338(a) and 35 U.S.C. § 281, and venue is proper in this judicial district under 28 U.S.C. § 1391(c).

## III. *Accused NBS Imprinters*

The following facts are undisputed regarding the accused NBS imprinter Models 710, 750, 305 and 2025:

1. Each of the accused models has two platen rollers.

2. The dimensions, including the width, of each of the two platen rollers in the accused models are substantially identical.

3. On the left-to-right stroke, the first platen roller of the accused models imprints all of the lines of embossing from a plastic credit card.

4. Most plastic credit cards have at least three lines of embossed characters, only one line of which is in a machine readable font.

348

5. On a return right-to-left stroke, the second platen roller of the accused models imprints all of the lines of embossing from a metal merchant plate.

## IV. '120 Patent Infringement

Plaintiffs contend that the '120 patent is not infringed by NBS accused imprinters under either A) literal infringement or B) the doctrine of equivalents.

### A. '120–Literal Infringement

Plaintiffs argue no literal infringement by pointing out that the accused NBS imprinters have platen rollers of substantially the same width, whereas the drawings in the '120 patent show one narrow platen and one wide platen in an assembly designed to selectively imprint MICR characters, as specifically described in the specifications of the '120 patent. Plaintiffs also argue, according to the undisputed facts, that accused NBS imprinters use two embossed printing devices, namely a credit card and a metal merchant plate, while Claim 7 of the '120 patent describes a singular embossed printing device.

Defendants contend that plaintiffs suggest an improper reading of the '120 patent's Claim 7, which defendants argue describes a device which can print more than one line of MICR characters with one of the platen rollers, and that the claim mentions nothing about the width of the rollers in the two platen roller assembly. In addition, defendants point out that the reference to MICR characters in the specification explicitly mentions other types of machine readable characters. Through their expert witness, John A. Maul, defendants also argue that embossed printing "device" is used interchangeably with "devices" (R 1472–73) and in the alternative such description does not limit the operation or adaptability of the machine described in Claim 7.

■ Plaintiffs' argument is based on their assertion that this Court must read the language of the claim in light of the specification and the file wrapper, *Graham v. John Deere Co.*, 383 U.S. 1, 33, 86 S.Ct. 684, 701, 15 L.Ed.2d 545 (1966); *United States v. Adams*, 383 U.S. 39, 48–49, 86

S.Ct. 708, 712–713, 15 L.Ed.2d 572 (1966). This argument is erroneous in the context of this case. The approach suggested by plaintiffs is proper to define the scope of the patent only when the claim itself is ambiguous. *Deere & Co. v. International Harvester Co.*, 658 F.2d 1137, 1141 (7th Cir. 1981). Since there is no ambiguity on the face of Claim 7 of the '120 patent, defendants correctly argue that the Court is to read the claim alone as the measure of the invention. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 339, 81 S.Ct. 599, 600, 5 L.Ed.2d 592 (1965); *Laser Alignment, Inc., et al. v. Woodruff & Sons, Inc., et al.*, 491 F.2d 866, 872, (7th Cir. 1974), *cert. denied*, 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974).

■ Claim 7 of the '120 patent read alone defines the platen roller assembly in the accused NBS imprinters and is infringed with respect to the platen assembly. But, since Claim 7 describes printing portions of the same printing device and the accused NBS imprinters imprint off two printing devices, a credit card and a metal plate, the NBS accused devices do not "fall clearly within the claim," and there is no literal infringement. *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 607, 70 S.Ct. 854, 855, 94 L.Ed. 1097 (1950).

### B. Doctrine of Equivalents

Plaintiffs next argue that there can be no infringement under the doctrine of equivalents since the accused NBS imprinters print the entirety of a credit card on one stroke and the entirety of the metal merchant plate on the second return stroke. According to plaintiffs' expert witness, Roy VanDerLinden, their platen roller assembly does not need to selectively imprint portions of the same printing device because it imprints OCR (Optical Character Recognition) characters which do not require selective imprinting to produce the high quality of impression necessary for MICR characters (R 1009). Through VanDerLinden's testimony (R 1028) and the testimony of plaintiffs' other expert witness, David J. Williamowsky (R 1265), plaintiffs argue that the

accused NBS imprinters: 1) do not use the invention embodied in Claim 7 of the '120 patent, 2) are not used for the same purpose as a device described in the '120 patent, and 3) do not achieve the same result as the '120 patent device.

Defendants contend that the accused NBS imprinters have an identity of means, operation and result with the invention claimed in Claim 7 of the '120 patent, and that it is of no importance to the issue of infringement of the '120 patent invention whether embossed information is imprinted from one or more plates. Defendants also argue that the '120 patent invention applies to OCR as well as MICR characters and that it benefits the imprinting of both OCR and MICR characters.

■ The doctrine of equivalents is based on the premise that, in order to find infringement it is not necessary that all possible embodiments of the invention be described or illustrated in the patent claim. Thus, infringement is not avoided where the alleged infringer varies the apparatus described in the specification or illustrated in the drawings. *United States v. Adams*, 383 U.S. at 49, 86 S.Ct. at 713. *Ellipse Corp. v. Ford Motor Co.*, 452 F.2d 163, 167 (7th Cir. 1971) *cert. den.* 406 U.S. 948, 92 S.Ct. 2041, 32 L.Ed.2d 337, *reh. den.* 409 U.S. 898, 93 S.Ct. 99, 34 L.Ed.2d 157 (1972), *Toro Co. v. R. L. Nelson Corp.*, 524 F.Supp. 586, 590 (C.D.Ill.1981). The policy behind the doctrine of equivalents is the foundation on which a patent's protection and value rest. As the Supreme Court has stated, " . . . [T]o permit imitation of a patented invention which does not copy every literal detail would be to convert the protection of the patent grant into a hollow and useless thing." *Graver Mfg. Co. v. Linde Co.*, 339 U.S. at 607, 70 S.Ct. at 856.

Both Maul and VanDerLinden agree that the invention disclosed in Claim 7 of the '120 patent refers to the refinement of a two platen roller method of selective imprinting to a two stroke (forward-return) movement. According to Maul's testimony, the adaptation of the '120 invention to a data recorder having two printing devices does not sufficiently vary the identity and means of the '120 invention to avoid infringement by equivalents (R 534). Maul further testified that, at the time the '120 invention was developed, up to the present, the imprinting art has used printing device to mean a credit card and station plate either separately or in combination (R 1472–73). Plaintiffs' experts offered no contrary evidence to Maul's testimony on the meaning of "printing device" in the imprinting art. Additionally, Williamowsky's direct testimony that an embossed printing device means only one plate (R 1266) is contradicted by his cross-examination testimony, in which he admitted that the device in the '120 patent drawings could print from two printing devices together, namely a credit card and a station plate (R 1348).

■ The difference between the "literal detail" of the singular embossed printing device in Claim 7 and the two printing devices in the accused NBS imprinters is merely one of claim phraseology. Such a comparison does not address the question of identity of means, operation and result which is necessary in determining infringement by equivalents. *Reese v. Elkhart Welding and Boiler Works, Inc.*, 447 F.2d 517, 527 (7th Cir. 1971); *Skirow v. Roberts Colonial House, Inc.*, 361 F.2d 388, 391 (7th Cir. 1966). The Court rejects plaintiffs' expert testimony, and accepts defendants' expert testimony to the effect that the NBS imprinters are "the structural equivalent of the device described in" Claim 7 of the '120 patent, and "perform . . . substantially the same function, in substantially the same way, to achieve the same results, even though . . . [they] differ . . . in form or shape." *Machine Co. v. Murphy*, 97 U.S. 120, 125, 24 L.Ed. 935 (1878); *Reese v. Elkhart Welding*, 447 F.2d at 527. Defendants have carried their burden of proof as to infringement.

### V. *'120 Patent Validity*

■ Plaintiffs attack the validity of the '120 patent on five grounds. They assert that the patent is: A) invalid for antic-

ipation under 35 U.S.C. § 102, B) invalid for obviousness under 35 U.S.C. § 103, C) unenforceable under 35 U.S.C. §§ 112, 115, 116, D) invalid for "on sale" bar under 35 U.S.C. § 102(b) and, E) unenforceable for fraud on the Patent Office under 37 C.F.R. § 1.56. Defendants assert that the '120 patent is valid. Plaintiffs bear the burden of proving invalidity and must overcome by clear and convincing proof the presumption of validity established by 35 U.S.C. § 282. *Laser Alignment, Inc. v. Woodruff & Sons, Inc.*, 491 F.2d at 871; *Ashland Oil, Inc. v. Delta Oil Products Corp.*, 212 USPQ 508, 513 (E.D.Wisc.1981).

### A. '120 Anticipation

The Patent Office rejected Claim 7 of the reissue application for the '120 patent as fully anticipated by the Cox Patent 539,356. Plaintiffs' expert VanDerLinden found no reason to criticize the Patent Office's rejection of Claim 7. (R 1211). Nevertheless, VanDerLinden was unable to identify any single patent with a filing date or a publication dated prior to October 22, 1963 (one year prior to the filing date of the '120 patent) that discloses each and every element or aspect of the method defined by Claim 7 of the '120 patent (R 1146–47, 1150). In fact, VanDerLinden's cross-examination testimony indicates that the Cox Patent 539,356 discloses a printing press and not a table-top imprinter as embodied in Claim 7.

Despite VanDerLinden's testimony, plaintiffs argue that defendants are bound by the Patent Office determination of Claim 7's invalidity, that their only recourse is to the Court of Customs and Patent Appeals (35 U.S.C. § 141) or the Circuit Court for the District of Columbia (35 U.S.C. § 145), and that this Court has no authority to disturb the Patent Office determination. Defendants argue that the Patent Office determination is not binding, and assert that VanDerLinden's testimony compels this Court to make its own finding of validity.

Anticipation is a strictly technical defense. Unless all of the same ele-

ments are found in exactly the same situation and united in the same way to perform an identical function, there is no anticipation. 35 U.S.C. § 102 (1976). *Illinois Tool Works, Inc. v. Sweetheart Plastics, Inc.*, 436 F.2d 1180, 1182–1183 (7th Cir. 1971), *cert. denied* 403 U.S. 942, 91 S.Ct. 2270, 29 L.Ed.2d 722 (1971); *Shelco, Inc. v. Dow Chemical Co.*, 466 F.2d 613, 614 (7th Cir. 1972), *cert. denied*, 409 U.S. 876, 93 S.Ct. 125, 34 L.Ed.2d 129 (1972). Although the Cox Patent 539,356 discloses two rollers capable of printing in opposite directions, VanDerLinden's identification of the device embodied in the Cox patent as a printing press supports this Court's conclusion that there is no identity of function between the two patents, and therefore no anticipation. This is so even though the elements considered by themselves might resemble the elements in the imprinter disclosed by Claim 7 of the '120 patent. *Sargent-Welch Scientific Co. v. J/B Industries*, 496 F.Supp. 972, 976 (N.D.Ill.1980).

Plaintiffs argue that the Court is bound by the Patent Office's finding of anticipation in the reissue application proceedings for the '120 patent. This Court disagrees for two reasons. First, once a patent of invention has been granted, the Patent Office has no authority to invalidate the claims of the original patent in subsequent reissue proceedings. The Patent and Trademark Office does not regain power over the original patent's validity when a reissue patent is applied for. When a patent has received the signature of the Secretary of the Interior, countersigned by the Commissioner of Patents, and has had affixed to it the seal of the Patent Office, it has passed beyond the control and jurisdiction of that office, and is not subject to be revoked or cancelled by the President, or any other officer of the Government. *United States v. Schurz*, 102 U.S. 378, 26 L.Ed. 167 (1880), *United States v. Am. Bell Telephone Co.*, 128 U.S. 315, 363, 9 S.Ct. 90, 95, 32 L.Ed. 450 (1888). "The only authority competent to set a patent aside, or to annul it, or to correct it for any reason whatever, is vested in the courts of the United States,

and not in the department which issued the patent." *McCormick Harvesting Machine Co. v. Aultman,* 169 U.S. 606, 609, 18 S.Ct. 443, 444, 42 L.Ed. 875 (1898); *Johnson & Johnson v. Wallace A. Erickson & Co.,* 627 F.2d 57, 59 (7th Cir. 1980).

A second reason the Court is not bound by the Patent Office's findings is the fact that the time for surrendering an original patent in reissue proceedings occurs when the reissue patent is granted. There is no surrender of the original patent if the reissue patent is rejected. Rather, the original patent stands as if no application had ever been made for a reissue. *Allen v. Culp,* 166 U.S. 501, 505, 17 S.Ct. 644, 645, 41 L.Ed. 1093 (1897); *U.S. v. Marifarms, Inc.,* 345 F.Supp. 858, 861 (D.Del.1972). It is true that the reissue statute as well as the Patent Office Rules require surrender of the original patent before a reissue patent may be granted, 35 U.S.C. § 251; Rule 171, 37 C.F.R. § 1.171. However, 35 U.S.C. § 252, entitled "Effect of Reissue," specifically states that the surrender of the original patent does not take effect until the issuance of the reissue patent. *American Tel. & Tel. Co. v. Milgo Electronic Corp.,* 416 F.Supp. 951 (S.D.N.Y.1976).[1]

Plaintiffs have not satisfied their burden of clear and convincing proof as to anticipation of Claim 7 of the '120 patent. Therefore, this Court finds that the '120 patent was not anticipated.

### B. *'120 Obviousness*

The appropriate analysis for a determination of obviousness has been described by the Supreme Court as follows:

"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or non-obviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented."

*Graham v. John Deere Co.,* 383 U.S. at 17–18, 86 S.Ct. at 694.

Plaintiffs argue obviousness on two grounds, neither of which is accepted by the Court. First, according to plaintiffs' expert VanDerLinden, it would have been "very, very obvious" to substitute the double eccentric platen roller in the prior art '800 patent (the same one that is in issue in this action, p. 355, *infra.*) into the data recorder embodied in the prior art Patent No. 3,018,725, which discloses one platen roller imprinting in a left-to-right stroke with an idling, raised return stroke (R 1210). VanDerLinden testified that such a combination of the '800 patent and the '725 patent would operate in the same way producing the same results as the '120 patent's Claim 7. Second, plaintiffs offered other prior art patents which they claimed would make the '120 invention obvious to a person of ordinary skill in the art.

Defendants' expert testified that his designers would have had "a very bad time" trying to substitute the '800 patent's double eccentric platen roller into the device disclosed in the '725 patent, and that he never thought of making such a substitution at the time.

This Court begins with plaintiffs' first ground for obviousness: the combination of the '800 and '725 patents. Obviousness under 35 U.S.C. § 103 is to be determined "as of the time the invention was made." Both parties' experts, however, based their opinions of the obviousness of the '800/'725 combination on experience possessed as of the time of the trial. This speculation as to the '120 patent invention's similarity to a "particular combination of

---

1. For the same reasons that this Court does not accept plaintiffs' claim that the Court is bound by the Patent Office's rejection of the reissue application for the '120 patent, the Court refuses to accept plaintiffs' theory that the Patent Office's findings create a presumption of invalidity as to Claim 7 of the '120 patent.

352

elements from prior patents" constituted an improper use of hindsight as a test of obviousness. *Holley v. Outboard Marine Corp.*, 241 F.Supp. 657, 665 (N.D.Ill.1964), *aff'd.* 345 F.2d 351 (7th Cir. 1965), *cert. denied* 383 U.S. 934, 86 S.Ct. 1062, 15 L.Ed.2d 851, *reh. denied* 384 U.S. 914, 86 S.Ct. 1334, 16 L.Ed.2d 366 (1966); *Walt Disney Productions v. Fred A. Niles Com. Ctr., Inc.*, 369 F.2d 230, 234 (7th Cir. 1966). Because the experts' testimony was based on hindsight, it is not to be considered by this Court, and, as a result, the '120 patent retains its presumption of validity under 35 U.S.C. § 282. The strength of this presumption is weakened in this case, however, where, of the seven prior art patents presented in plaintiffs' analysis of obviousness, only one (No. 2,104,863) was considered by the Patent Office. The presumption of validity does not exist against prior art which was not considered by the Patent Office when the patent was issued. *Lee Blacksmith, Inc. v. Lindsay Bros., Inc.*, 605 F.2d 341, 342–343 (7th Cir. 1979).[2] Thus, the six prior art patents not considered by the Patent Office must be made a part of this Court's obviousness analysis.

As a result, the Court now turns to plaintiffs' second ground for obviousness: the other prior art patents.

Based on expert witness VanDerLinden's testimony, plaintiffs argue that Claim 7 of the '120 patent would have been obvious to a person of ordinary skill in the art at the time the invention was made. VanDerLinden based his conclusion of obviousness on a "combination of the teachings of all those patents." (R 1173). The patents referred to by VanDerLinden include Nos. 1,280,192; 1,941,667; 2,775,936; 3,018,725; 3,113,516; 3,340,800. All but one of these patents discloses either a single platen roller operating in a single stroke method, tandum platen rollers operating in a single stroke method, or two platen rollers operating in a single stroke, idling return method. The '800 patent discloses a two platen roller, multiple stroke imprinter.

2. It is, of course, true that the presumption of validity is strengthened where the prior art relied on by the party claiming invalidity is the same as or no better than that considered and

Defendant expert Maul testified that these prior art patents provide no teaching for combining their various elements to yield a device using two platen rollers printing on opposite strokes from different portions of a printing device as set forth in Claim 7 of the '120 patent (R 1425). Defendants offer the cross-examination testimony of VanDerLinden where, defendants claim, it was admitted that the '800 patent, which is the closest prior art patent, disclosed no teaching "of printing data with two rollers on opposite strokes." (R 1169).

■■■ It is well established in the Supreme Court and in the Seventh Circuit that a combination of prior art elements need not produce a synergistic effect in order for the combination patent to be valid. *Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 282, 96 S.Ct. 1532, 1537, 47 L.Ed.2d 784, *reh. den.* 426 U.S. 955, 96 S.Ct. 3182, 49 L.Ed.2d 1194 (1976), *Republic Industries, Inc. v. Schlage Lock Co.*, 592 F.2d 963, 969 (7th Cir. 1979). *Sakraida* and *Republic* reaffirm as the test of obviousness in combination patents the analysis set forth in *Graham v. John Deere, supra.*, 383 U.S. p. 12, 86 S.Ct. p. 691. Regarding combinations of prior art elements, the obviousness test of § 103 does not turn on whether an invention is equivalent to some element in the prior art, but rather whether the difference between the prior art and the subject matter in question is a difference sufficient to render the claimed subject matter unobvious to one skilled in the applicable art. *Dann v. Johnston*, 425 U.S. 219, 228, 96 S.Ct. 1393, 1398, 47 L.Ed.2d 692 (1976).

■■■ While certain elements of Claim 7 of the '120 patent were disclosed in the prior art, the prior art combines none of these elements to produce the result which makes the '120 patent distinctive: selective imprinting by two platen rollers on opposite strokes. This Court credits defendants' ex-

rejected by the Patent Office. *Tracor, Inc. v. Hewlett-Packard Co.*, 519 F.2d 1288, 1292 (7th Cir. 1975). That, however, is not this case.

pert testimony which found no teaching of the '120 invention and rejects plaintiffs' expert testimony. Based on the prior art and the expert testimony, this Court finds Claim 7 of the '120 patent would not have been obvious to one reasonably skilled in the art at the time the invention was made.[3]

### C. 35 U.S.C. §§ 112, 115 and 116

35 U.S.C. § 112 requires that in order to be valid, patent claims must particularly point out and distinctly claim the subject matter which the applicant regards as his invention. *Rockwell v. Midland-Ross Corporation*, 438 F.2d 645, 653 (7th Cir. 1971). The purposes for the precision requirements are to warn others skilled in the art against infringement, and to enable them to benefit from the teachings of the patent. *Ellipse Corp. v. Ford Motor Co.*, 452 F.2d at 170. Plaintiffs argue that Claim 7 of the '120 patent fails to meet this requirement. This Court disagrees.

Plaintiffs offered no testimony that Claim 7 of the '120 patent is not understandable to one of ordinary skill in the art. Rather than focusing on the precision of Claim 7, they merely assert that the patent's specifications disclose a narrower scope of invention than does defendants' interpretation of Claim 7 and that such inconsistent interpretation reveals defendants' failure to point out their invention. This argument misses the point of § 112. Therefore, it is insufficient to support a finding that the precision requirements of that statute have been violated, and to thus rebut the presumption of validity as to the Patent Office's findings. Furthermore, this Court finds that defendants' interpretation of Claim 7 of the '120 patent necessary to

find infringement is not inconsistent with the scope of the subject matter which the defendants' inventors regard as their invention, and, therefore, that Claim 7 of the '120 patent does particularly point out and distinctly claim the subject matter of the invention under 35 U.S.C. § 112. *Application of Cormany*, 476 F.2d 998, 1000 (Cust. & Pat.App.1973).[4]

Finally, the Court notes that plaintiffs erroneously assert invalidity under 35 U.S.C. §§ 115 and 116 since the inventor's oath of the '120 patent is included in the file wrapper and no joint inventors were involved in the '120 patent.

### E. '120 "On Sale" Bar

35 U.S.C. § 102(b) provides that a patent shall issue *unless* "the invention . . . was on sale in this country, more than one year prior to the date of the application for patent in the United States." "On sale" does not mean an actual accomplished sale but activity by the inventor or his company in attempting to sell the patented idea. *Amphenol Corp. v. General Time Corp.*, 397 F.2d 431, 433 (7th Cir. 1968). *Armour Research Foundation v. C. K. Williams & Co.*, 280 F.2d 499, 506 (7th Cir. 1960) *cert. denied* 365 U.S. 811, 81 S.Ct. 690, 5 L.Ed.2d 691, *reh. denied*, 366 U.S. 941, 81 S.Ct. 1657, 6 L.Ed.2d 852 (1961). The policy underlying the "on sale" bar is to prevent an inventor from holding back the secrets of his invention from general public knowledge while at the same time exploiting it commercially, thereby extending the duration of his legal monopoly. *Koehring Co. v. National Automatic Tool Co.*, 362 F.2d 100, 103 (7th Cir. 1966). The burden of establishing that the patented product was "on sale" must be satisfied by clear and convincing evidence.

---

**3.** In light of this Court's finding of unobviousness, it is unnecessary to address secondary considerations of commercial success, long felt need or failure of others. *See John Deere, supra*, 383 U.S. p. 12, 86 S.Ct. p. 691.

**4.** It should be noted that, even if the Court were to find that the defendants' interpretation of Claim 7 were not sufficiently precise, a serious question would remain as to the appropriateness of applying § 112 in the manner sug-

gested by plaintiff. Invalidity under § 112 is determined by the patentee's conduct when drawing up the patent claims and is not properly applied to the patentee's attempt at an alleged overly broad interpretation of a patent's claims. The latter is protected against by the doctrines of file wrapper estoppel and four corners interpretation of the claims and specifications of the patent.

*Minnesota Mining & Mfg. Co. v. Kent Industries, Inc.*, 409 F.2d 99, 100 (6th Cir. 1969).

Plaintiffs, relying on deposition testimony, argue that defendants' in-house production and pricing documents present a *prima facie* case of "on sale" bar because the documents clearly show a commercial exploitation of a product sufficiently similar if not identical, to the device disclosed in Claim 7 of the '120 patent. Plaintiffs rely chiefly on two of AM's in-house documents, a "Request For Estimate and Price Quotation," dated March 5, 1963 (PX–12A), and a "Request For Production Release," dated August 20, 1963 (PX–12K). In cases in which commercial exploitation has been established prior to the critical date (one year prior to the date of the application for patent), a necessary determination must be whether the item placed "on sale" sufficiently embodied the invention described in the patent in suit to invoke the bar of § 102(b). *Red Cross Mfg. Corp. v. Toro Sales Co.*, 525 F.2d 1135, 1141 (7th Cir. 1975). Exact identity is not required as long as the invention is essentially completed at the time of the invalidating sale. *Dart Industries, Inc. v. E. I. DuPont De-Nemours and Co.*, 489 F.2d 1359, 1365 (7th Cir. 1973) *cert. denied* 417 U.S. 933, 94 S.Ct. 2645, 41 L.Ed.2d 236 (1974). While the basic design of the two platen roller imprinter capable of printing on opposite strokes is revealed in the defendants' production and pricing documents, there is no evidence conclusive on whether the designed device was reduced to practice and was capable of being produced. It is for this reason that plaintiffs' claim of on-sale bar is rejected.

Under § 102(b), plaintiffs must establish that the alleged commercial exploitation occurred before October 22, 1963. Defendants rebutted plaintiffs' case by producing testimony from expert Maul (R 1486–1500) and witness Wasson (R 1505–1515) to the effect that the device embodied in Claim 7 of the '120 patent was still in the experimental and developmental stage in the critical time period. Specifically, defendants point to testing reports dated January 10, 1963 and August 13, 1963 (PX–121 and PX–12J). Defendants also point to a report prepared by R. L. Root, AM's patent counsel who worked on the '120 patent application. (PX–12L). PX–12L discloses that the "first batch" of machines (devices embodied in Claim 7 of the '120 patent) had been shipped on an order for the Association of American Railroads. The document was dated May 25, 1964. The documents demonstrate that modifications in the devices were being made during the relevant time period. This fact makes more onerous the burden of proving a reduction to practice, one of the requirements for "on sale" bar. *CTS Corp. v. Piher International Corp.*, 593 F.2d 777, 779 (7th Cir. 1979) *cert. denied* 444 U.S. 884, 100 S.Ct. 175, 62 L.Ed.2d 113 (1979). Plaintiffs have failed to carry their burden of clear and convincing proof that the alleged "on sale" devices were sufficiently complete and similar to the device embodied in Claim 7 of the '120 patent. While it is true that no completed sale is required, *Amphenol Corp. v. General Time Corp.*, 397 F.2d at 433, plaintiffs have not satisfied their burden of proving commercial activity of any kind with the requisite intention to exploit the '120 invention.

### F. '120 Fraud

Plaintiffs claim that in procuring the '120 patent, defendants committed fraud on the Patent Office in that they 1) falsely attributed novelty to the dual-platen roller assembly in the '120 patent, 2) falsely attributed inventorship, and 3) failed to disclose to the Patent Office the prior art of the '800 patent (and addressing machine) and evidence of the alleged "on sale" bar. It is this Court's conclusion that these allegations are unsupported by either the law or the facts.

A claim of fraud or inequitable conduct in soliciting a patent must be based on "clear, unequivocal and convincing" evidence and can be asserted only if there has been a deliberate misrepresentation in the Patent Office. *United States v. American Bell Tel. Co.*, 167 U.S. 224, 251, 17 S.Ct. 809, 815, 42 L.Ed. 144 (1897); *Scott Paper Co. v.*

*Fort Howard Paper Co.*, 432 F.2d 1198, 1204 (7th Cir. 1970), *cert. denied* 401 U.S. 913, 91 S.Ct. 882, 27 L.Ed.2d 812 (1971). To prove fraud on the Patent Office, one must establish that the applicant knowingly and willfully concealed information from that office, that the information was not known to the Patent Examiner, and that the information concealed was material. *Columbia Broadcasting System, Inc. v. Zenith Radio Corp.*, 391 F.Supp. 780, 791 (N.D.Ill.1975) *affd.* 537 F.2d 896 (7th Cir. 1976); *Reynolds Metals Co. v. Aluminum Co. of America*, 457 F.Supp. 482, 500 (N.D.Ind.1978), *rev'd on other grounds* 609 F.2d 1218 (7th Cir. 1979), *cert. denied* 446 U.S. 989, 100 S.Ct. 2976, 64 L.Ed.2d 847 (1980). Plaintiff has failed to meet its burden of proof.

■ Plaintiffs' charge of false attribution of novelty is rejected in light of this Court's finding that Claim 7 of the '120 patent was non-obviousness. Similarly, plaintiffs' claim of false attribution of inventorship is rejected. The latter argument is conditioned on limiting the '120 invention to printing only one row of MICR characters. This Court has found, however, that the '120 invention should not be so limited. Additionally, plaintiffs' charge of fraud for defendants' alleged failure to disclose prior art of the '800 patent and its corresponding addressing machine and of the prior art commercial Model TP addressing machine is rejected in light of this Court's finding that Claim 7 of the '120 patent is non-obvious. This finding is supported by the rule that it is a permissible exercise of patentee's judgment to withhold prior art on his belief that it would not affect the Examiner's evaluation of the pending application. *CTS Corp. v. Piher International Corp.*, 527 F.2d 95, 99–100 (7th Cir. 1975), *cert. denied* 424 U.S. 978, 96 S.Ct. 1485, 47 L.Ed.2d 748 (1976).

Finally, plaintiffs' charge of fraud for failure to disclose evidence of the alleged "on sale" bar is rejected by this Court's finding that plaintiff failed to carry his burden of proving "on sale" bar.

## VI. *'800 Patent Infringement*

Plaintiffs contend that the '800 patent is not infringed by NBS accused imprinters under either A) literal infringement or B) the doctrine of equivalents. This Court concludes that the facts demonstrate neither literal infringement nor infringement by equivalents.

### A. *'800 Literal Infringement*

■ Plaintiffs contend that no literal infringement of the '800 patent exists on three grounds. First, they point out that the accused NBS imprinters have platen rollers of substantially the same width, whereas Claim 12 of the '800 patent discloses one narrow platen roller to "roll along only said one row of characters, and a second platen roller dimensioned and aligned to roll along other than said one row of characters." Plaintiffs point out that the "said one row of characters" is described in Claim 12 as containing "a series of machine recognition characters requiring a high order of impression uniformity." Second, accused NBS imprinters do not have a platen roller which prints only one row of machine recognition characters. Third, Claim 12 of the '800 patent describes a singular embossed printing device.

Defendants contend that the device disclosed in Claim 12 of the '800 patent is capable of printing more than one row of characters, and also that embossed printing "device" is used interchangeably with "devices."

The disputed issue of the embossed printing device mentioned in Claim 12 of the '800 patent is identical to the issue of literal infringement regarding Claim 7 of the '120 patent. See pp. 347–348, *supra*. The Court's conclusion is identical as well—the '800 patent, like the '120 patent, is not literally infringed by the NBS accused imprinters.

### B. *Doctrine of Equivalents*

Like their argument regarding literal infringement, plaintiffs' argument against a finding of infringement under the doctrine of equivalents is the same as that made with regard to Claim 7 of the '120 patent.

Through their experts, plaintiffs assert that the accused NBS imprinters do not use the invention embodied in Claim 12 of the '800 patent, are not used for the same purpose as a device described in the '800 patent, and do not achieve the same result as the '800 patent. Finally, plaintiffs argue that defendants are estopped from arguing the doctrine of equivalents by the doctrine of file wrapper estoppel.

Defendants contend that the accused NBS imprinters have an identity of means, operation and result with the invention claimed in Claim 12 of the '800 patent, and that it is of no importance to the issue of infringement of the '800 patent invention whether embossed information is imprinted from one or more plates. Defendants also contend that the '800 invention is capable of printing more than one row of characters with one of the platen rollers, that it applies to OCR as well as MICR characters, and that it benefits the imprinting of both OCR and MICR characters.

■■■■ While infringement is not avoided by varying the apparatus described in the specification or illustrated in the drawings of a patent, *United States v. Adams*, 383 U.S. at 49, 86 S.Ct. at 713; *Ellipse Corp. v. Ford Motor Co.*, 452 F.2d at 167; *Toro Co. v. R. L. Nelson Corp.*, 524 F.Supp. at 590; infringement by equivalents requires a real identity of means, operation and result between the accused products and the allegedly infringed patent. *Reese v. Elkhart Welding*, 447 F.2d at 527; *Skirow v. Roberts Colonial House, Inc.*, 361 F.2d at 391. Defendants failed to demonstrate the requisite identity. In fact, defendants' expert Maul testified that he had never seen a device as disclosed in Claim 12 of the '800 patent print more than one row of characters with one of the platen rollers (R 713–14). Further, Maul was unable to point to any passage in the '800 patent specifications which supports his testimony that the phrase "along only said one row of characters" does not exclude rolling along other rows of characters at the same time (R 753).

Unlike defendants, plaintiffs provided expert testimony which fully supported their position. Plaintiffs' experts testified that the accused NBS imprinters do not operate under the same function nor for the same purpose as the '800 invention. This Court found this testimony completely credible.

■■■ Additionally, plaintiffs correctly argue that defendants are estopped from arguing a function or purpose of Claim 12 of the '800 patent which is greater in scope than that which is claimed in the file wrapper of the '800 patent. Thus, even if their expert's testimony were credible, which this Court does not find, defendants would still be unable to invoke the doctrine of equivalents to its full extent.

■■■ Under the doctrine of "file wrapper estoppel", an applicant who has limited or modified a claim in order to avoid its rejection by the Patent Office may not later expand his claim by including the excluded matter, or its equivalents, or by omitting the limitations. *Ortho Pharmaceutical Corp. v. American Hospital Supply Corp.*, 534 F.2d 89, 94 (7th Cir. 1976); *Laser Alignment, Inc. v. Woodruff & Sons, Inc.*, 491 F.2d at 875. Defendants are estopped from arguing that the function of the '800 invention may be interpreted as its ability to print more than one row of characters with one of the platen rollers. Defendants offer this interpretation to support their assertion that the purpose of the '800 invention is not solely to solve the problem of imprinting MICR characters. It must be noted, however, that defendants' expert Maul testified that the problem of imprinting MICR characters was solved by the '800 invention (R 739–40) and plaintiffs' expert Williamowsky testified that the MICR problem cannot be divorced from the invention disclosed in Claim 12 of the '800 patent (R 1262). This Court believes that the latter is a proper characterization of the file wrapper history of Claim 12 of the '800 patent. Thus, defendants' interpretation of the function and purpose of the '800 invention is rejected. Defendants' interpretation is tantamount to arguing infringement under a claim (Claim 27) which was rejected in the file wrapper history. This cannot be allowed. Claim 27 falls in the category of

claims which have "been narrowed in order to obtain the issuance of a patent by distinguishing the prior art. [Such claims] cannot be sustained to cover that which was previously by limitation eliminated from the patent." *Graham v. John Deere Co.,* 383 U.S. at 33, 86 S.Ct. at 702.

For the foregoing reasons, defendants have failed to carry their burden of proof as to infringement.

## VII. *'800 Patent Validity*

Plaintiffs attack the validity of the '800 patent on five grounds. They argue that the patent is: A) invalid for anticipation, B) invalid for obviousness, C) unenforceable under §§ 112, 115 and 116, D) invalid for "on sale" bar, and E) unenforceable for fraud on the Patent Office. Defendants assert that the '800 patent is valid.

### A. *'800 Anticipation*

Plaintiffs' expert VanDerLinden found the method disclosed in Claim 12 of the '800 patent anticipated in each of the Patents Nos. 1,280,192; 2,758,538; and 3,125,951. However, VanDerLinden later testified that he was unable to identify any single patent with a filing date or a publication date prior to April 25, 1962 (one year prior to the filing date of the '800 patent) that discloses each and every element or aspect of the method defined by Claim 12 of the '800 patent (R 1180–81).

As has already been stated, p. 350, *supra.*, there is no anticipation unless all of the same elements are found in exactly the same situation and united in the same way to perform an identical function. *Illinois Tool Works, Inc. v. Sweetheart Plastics, Inc., supra, Shelco, Inc. v. Dow Chemical Co., supra.* The Lyman Patent No. 3,125,-951, which embodies a device similar to the '800 invention, discloses a single segmented roller printing in a single stroke, constituting a platen assembly which fails to imprint with an impression quality as high as the '800 invention. The '192 patent and the '538 patent disclose devices not as similar to the '800 invention as the device disclosed in the '951 patent. In light of these facts and of expert VanDerLinden's contradicting testimony, this Court con-

cludes that plaintiffs have failed to carry their burden of clear and convincing proof as to anticipation of Claim 12 of the '800 patent.

### B. *'800 Obviousness*

According to plaintiffs' expert VanDer-Linden, it would have been obvious to one of ordinary skill in the art to use independent strokes of two platen rollers, one of which would take an impression along one row of characters and the other along the remaining rows of characters (R 1087). It is uncontested that the '800 patent states that the difference between it and the Patent No. 2,359,849 lies in the '800 platen assembly, which rolls the platen parallel to, rather than perpendicular with, the characters and allows for selective imprinting of one row of MICR characters. Plaintiffs offer prior art Patents Nos. 1,280,192; 3,125,951; and 1,941,667 as teaching a combination of the '800 patent's elements in the method of Claim 12 of the '800 patent. The '192 patent discloses two platen rollers printing two single strokes in a forward-return movement parallel to the two separate printing devices. The '951 patent discloses selective imprinting of one row of MICR characters in a single stroke parallel movement by a narrow platen roller segmented from a wide platen roller on a single roller. The '667 patent discloses tandem platen rollers imprinting from either two separate printing devices or two different parts of the same printing device.

A finding of obviousness is appropriate when a Court is presented with inventions that merely rearrange old elements in new combinations with each element performing the same function it performed in the prior art. Such a finding must be made even if the new combination produces a more striking result than the old elements would produce functioning individually. *St. Regis Paper Co. v. Bemis Co., Inc.,* 549 F.2d 833, 838 (7th Cir. 1977) *cert. denied* 434 U.S. 833, 98 S.Ct. 119, 54 L.Ed.2d 94 (1977). While Claim 12 of the '800 patent discloses an improvement in imprinting MICR characters with high quality impres-

sion, the '800 invention uses an arrangement of elements disclosed in prior art patents, albeit in a different combination, to produce this improved result. In light of the rule that combination patents are to be found unpatentable if "wanting in any unusual or surprising consequences from the unification of the elements here concerned." *A&P Tea Co. v. Supermarket Corp.*, 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950) *reh. denied* 340 U.S. 918, 71 S.Ct. 348, 95 L.Ed. 663 (1951), this Court feels that the evidence compels it to hold that the '800 patent is invalid for obviousness.[5]

■ Additional support for this Court's finding of obviousness is provided by a detailed reading of the file wrapper for the '800 patent. The file wrapper history reveals that originally the Patent Office was reluctant to allow the claims of the '800 patent in light of the '951 patent. Defendants were able to persuade the office to grant the patent by pointing out that Claim 12 of the '800 patent disclosed that its device selectively imprinted separate portions from the same printing device. Plaintiffs' expert testimony, however, revealed that the '667 patent, which was not presented to nor considered by the Patent Office, discloses imprinting of separate portions of the same printing device. As has already been stated, pp. 351-352, *supra.*, the presumption of validity does not exist against evidence of prior art not before the Patent Office. *Republic Industries, Inc. v. Schlage Lock Co.*, 592 F.2d at 972; *The Allen Group v. Nu-Star, Inc.*, 575 F.2d 146 (7th Cir. 1978) (per curiam). In light of this and in light of the testimony with regard to the '667 patent, this Court finds that Claim 12 of the '800 patent would have been obvious to one of ordinary skill in the art at the time the invention was made.

### C. 35 U.S.C. §§ 112, 115 and 116

■ Plaintiffs make identical arguments with regard to the invalidity of Claim 12 of the '800 patent under 35 U.S.C. § 112 as they made in reference to Claim 7 of the '120 patent. *See* pp. 353-354, *supra.* Defendants rest on the presumption of validity applied to Claim 12 of the '800 patent, especially as to technical requirements considered by the Patent Office. This Court's comments regarding the failure of disclosure alleged in Claim 7 of the '120 patent are dispositive in the case of Claim 12 of the '800 patent, which satisfies the requirement of precision set forth in § 112. *See* pp. 353-354, *supra.*

■ Plaintiffs' assertion of invalidity under 35 U.S.C. §§ 115 and 116 is unsupported by the file wrapper of the continuation application for the '800 patent, which properly contains the oath of the joint inventors and the joint affidavit and petition for addition of inventors.

### D. '800 "On Sale" Bar

As was stated earlier, pp. 353-354, *supra.*, "on sale" bar requires clear and convincing evidence of commercial exploitation of a device, not identical to but complete and similar to the device disclosed in Claim 12 of the '800 patent. Plaintiffs present their *prima facie* case via deposition testimony and defendant's in-house documents. Plaintiffs rely chiefly on an exhibit entitled "Status Report—Transverse Platen Arrangement Model 1900-9100 Addressograph Machines," dated April 2, 1962 (PX-11).[6]

---

**5.** Defendants contend that none of the prior art patents presented by plaintiffs teach the invention embodied in Claim 12 of the '800 patent of selectively imprinting one row of MICR characters from a single printing device in two separate strokes with two platen rollers. They point out that the '192 patent does not teach the imprinting of one row of characters with one platen roller in one stroke and the remaining characters with the other platen roller in a separate stroke from the same printing device. Additionally, the '951 patent utilized a single stroke rather than two separate strokes for imprinting one row of MICR characters, and finally, the '667 patent discloses tandem platen rollers as opposed to two platen rollers mounted on a double eccentric shaft. Despite these distinctions, the combined teachings of prior art Patents Nos. '192, '951, '667 and '849 render the '800 patent invalid for obviousness.

**6.** Under § 102(b), plaintiffs must establish that the commercial exploitation occurred before April 25, 1962.

Plaintiffs also rely on a document entitled "Advance Product Data For The Transverse Platen," dated May 29, 1962 (PX–56). The latter is used to identify the Model 1900 and 9100 Addressograph Machines referred to in PX–11 as devices embodied in Claim 12 of the '800 patent.

■■■ While evidence of commercial exploitation, rather than a completed sale, is sufficient to establish a *prima facie* case for "on sale" bar, *Amphenol Corp. v. General Time Corp.,* pp. 353–354, *supra.,* once such commercial activity has been established, invalidity may be avoided by showing that the sales activity was "substantially for purposes of experiment." *Smith and Griggs Mfg. Co. v. Sprague,* 123 U.S. 249, 256, 8 S.Ct. 122, 126, 31 L.Ed. 141 (1887); *Red Cross Mfg. Corp. v. Toro Sales Co.,* 525 F.2d at 1139. The question of whether a use of sales activity is for the purpose of experimentation is one of the inventor's intent. *Red Cross Mfg. Corp. v. Toro Sales Co.,* 525 F.2d at 1144; *Solo Cup Co. v. Paper Machinery Corp.,* 240 F.Supp. 126, 131 (E.D. Wis.1965), *modified on other grounds,* 359 F.2d 754 (7th Cir. 1966). The interoffice correspondence dictated by B. L. Meyers reveals the inventors' intent to test the alleged "on sale" devices for eight weeks after their exhibition. The prime purpose of the exhibition was to permit prospective customer evaluation rather than to take orders immediately and profit on the alleged "on sale" devices. "[T]he placing of an invention 'on sale' for experimental purposes to enable the inventor to determine whether the invention is complete and functional does not place the invention 'on sale' within the meaning of the statute." *Red Cross Mfg. Co. v. Toro Sales Co.,* 525 F.2d at 1144; *See also Dart Industries, Inc. v. E. I. DuPont De Nemours and Co.,* 489 F.2d at 1366. This Court concludes that defendants have successfully rebutted plaintiffs' *prima facie* evidence of commercial exploitation, and holds that no "on sale" bar may be found on these facts.

Even if this Court were to find that defendants had failed to rebut plaintiffs' *prima facie* case, it would nevertheless be com-pelled to find that plaintiffs had failed to show by clear and convincing proof that the alleged "on sale" devices were sufficiently complete and similar to the device embodied in Claim 12 of the '800 patent to justify a finding of "on sale" bar. This is especially true in light of the testing which took place eight weeks after the exhibition. This testing extends past the critical date of one year prior to the application date, *see* n.6, *supra.* Also, PX–56 describing the alleged "on sale" devices is dated after the critical date for "on sale" bar.

### E. *'800 Fraud*

■■■ Plaintiffs' argument that defendants committed fraud because they failed to disclose evidence of the alleged "on sale" bar is obviated by this Court's finding that no such bar was shown. Additionally, plaintiffs did not establish that the defendants knowingly and willfully concealed material information from the Patent Office. *Columbia Broadcasting System, Inc. v. Zenith Radio Corp., supra.* Plaintiffs provided no support for their allegations of inequitable conduct, nor did they prove bad faith. *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.,* 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381. In sum, plaintiffs' allegation of fraud is completely without merit.

### VIII. *'777 Patent Infringement*

Plaintiffs contend that the '777 patent is not infringed by NBS accused imprinters under either A) literal infringement or B) the doctrine of equivalents.

### A. *'777 Literal Infringement*

■■■ This Court finds no literal infringement of the '777 patent because the accused NBS imprinters do not clearly fall within Claims 1 and 2 of the '777 patent. *Graver Tank & Mfg. Co. v. Linde Air Products Co., supra.* Claims 1 and 2 of the '777 patent read alone do not encompass a two platen roller assembly in which the two rollers are supported by a single support rod, as embodied in the accused NBS imprinters (R 1125). Claims 1 and 2 of the '777 patent also do not encompass a two platen roller assembly in which one of the two separately

supported platen rollers has an extension platen, as embodied in the accused NBS imprinters. The Court is not persuaded by defendants' attempts to contradict these observations. In fact, defendants' expert Maul admitted that the support for the platen assembly of the NBS accused imprinters differs from that disclosed in Claims 1 and 2 of the '777 patent (R 1377–78). On these facts, no literal infringement may be found.

## B. *Doctrine of Equivalents*

Plaintiffs argue first that defendants cannot discharge their burden of proving infringement since it is not possible to determine what subject matter is within the scope of Claims 1–5 of the '777 patent. Plaintiffs support this assertion by alleging invalidity of Claims 1–5 of the '777 patent under 35 U.S.C. § 112. In the alternative, plaintiffs argue that even if it were possible to determine the scope of Claims 1–5 of the '777 patent, defendants are estopped by the file wrapper history from claiming infringement by equivalents. It is asserted that the doctrine of file wrapper estoppel prevents defendants from claiming that the '777 invention embodies anything other than two parallel platen support elements, thereby excluding from infringement by equivalents the accused NBS imprinters.

In support of their assertion that the '777 patent is infringed under the doctrine of equivalents, defendants contend, through Mr. Maul's testimony, that the accused NBS imprinters have identity of means in the support yokes dangling from a single support rod and that their operation from the single support rod is the same as from the two rods embodied in Claims 1 and 2 of the '777 patent (R 654, 676). It is asserted that the other accused NBS imprinters which disclose yokes dangling from two aligned support shafts produce the same function when printing a credit card and a merchant plate, and that there exists further identity of operation between the yoke-stop assembly embodied in the accused NBS imprinters and that disclosed in Claims 1 and 2 of the '777 patent (R 1378).

Additionally, defendants contend that the accused NBS imprinters have screws identical to those embodied in Claim 3 of the '777 patent which provide for the separate and independent adjustment of the pressure applied against the printing plate by each platen roller (R 676–79). Finally, defendants argue that the accused NBS imprinters produce substantially the same imprinting result as the device disclosed in Claims 1–3 of the '777 patent.

As was stated earlier, pp. 355–356, *supra.,* infringement by equivalents is not avoided by varying the apparatus described in the specification or illustrated in the drawings of the patent. *United States v. Adams, supra., Ellipse Corp. v. Ford Motor Co., supra., Toro Co. v. R. L. Nelson Corp., supra.* Plaintiffs must fail in their argument that the absence of similar literal detail in the two platen roller support rods in Claims 1 and 2 of the '777 patent and the accused NBS imprinters precludes infringement by equivalents.

This Court is persuaded by the testimony of defendants' expert which established identity of means, operation and result between the '777 invention and the accused NBS imprinters. *Reese v. Elkhart Welding and Boil Works, Inc., supra. Skirow v. Roberts Colonial House, Inc., supra.* Both experts Maul and VanDerLinden agree and this Court finds that the significant element of the '777 invention discloses the separate and independent means of adjusting the pressure of each platen roller (R 804–5, 1023). This element is fully embodied by the accused NBS imprinters.

■ Plaintiffs also attempt to argue the doctrine of file wrapper estoppel. File wrapper estoppel traditionally precludes employing equivalents to enlarge patent claims to include areas explicitly abandoned before the Patent Office. *See* p. 356, *supra.* The claims made now were not abandoned before the Patent Office, but rather were fully part of the application as submitted. As a result, an estoppel theory does not apply. Claims 1–3 of the '777 patent cover the accused NBS imprinters and "may fairly be called the equivalent of

the ones described" in the accused NBS imprinters. *Laser Alignment, Inc. v. Woodruff & Sons, Inc.*, 491 F.2d at 875, *Dole Valve Co. v. Perfection Bar Equipment, Inc.*, 298 F.Supp. 401, 406 (N.D.Ill.1968), *aff'd* 419 F.2d 968 (7th Cir. 1969).

For the foregoing reasons, this Court concludes that defendants have carried their burden of proof as to infringement.

## IX. '777 Patent Validity

Plaintiffs attack the validity of the '777 patent on four grounds. They argue that it is: A) invalid for obviousness, B) unenforceable for failure of disclosure, C) unenforceable for fraud on the Patent Office, and D) unenforceable for failure to disclaim Claims 4 and 5 pursuant to 35 U.S.C. §§ 253 and 288.

### A. '777 Obviousness

Based on the testimony of expert VanDerLinden, plaintiffs argue that a person of ordinary skill in the art at the time the invention was made would have found it obvious to assemble an imprinter of the type disclosed in Claims 1–3 of the '777 patent. Plaintiffs argue that Patent No. 3,410,207 discloses an automatic yoke-stop assembly which activates an idling, raised return stroke of a single platen roller, as embodied in Claims 1 and 2 of the '777 patent and applied to the movement of the first platen roller. Further, plaintiffs point out that the '777 patent itself mentions the '120 patent as prior art for a two platen roller, double stroke imprinter. Additionally, plaintiffs argue: 1) that Patent No. 3,556,007 discloses independently adjustable platen rollers; 2) that Patent No. 3,661,080 discloses the concept of independently adjustable platen rollers placed parallel to each other; and 3) that Patent No. 3,577,917 discloses a spring-screw assembly for adjusting a single platen roller, which is shifted from one printing path to another in a forward-return, double stroke. Finally, plaintiffs' expert VanDerLinden testified that he observed the features of Claims 1–3 of the '777 patent in combination in these various prior art patents.

As established in the previous obviousness analyses, p. 357, *supra.*, a patent combining elements present in the prior art is patentable only after close scrutiny reveals a new or different function of the invention as a whole, *A&P Tea Co. v. Supermarket Corp., supra.* The presumption of validity attached to the combination patent may only be overcome by prior art which teaches the patent's combination of elements. This Court is persuaded by plaintiff's expert VanDerLinden's testimony that the teaching of the combination of the elements embodied in Claims 1–3 of the '777 patent could be found in the prior art patents. His testimony regarding the '777 invention is not based on improper hindsight, but rather is based on the perspective of "a hypothetical person" having all of the prior art at hand and having ordinary skill in the art at the time the invention was made. *Popiel Brothers, Inc. v. Schick Electric, Inc.*, 494 F.2d 162, 167 (7th Cir. 1974), *Gass v. Montgomery Ward*, 387 F.2d 129, 130 (7th Cir. 1967).

VanDerLinden's testimony is supported by evidence of prior art patents (Patents Nos. '007, '207 and '917) not considered by the Patent Office when it issued the '777 patent and hence unaffected by the patent's presumption of validity. *See Blacksmith, Inc. v. Lindsay Bros., Inc.*, pp. 351–352, *supra.* While it is true that the '080 patent (the fourth prior art patent on which VanDerLinden's testimony was based) was considered insufficient by the Patent Office to render the '777 invention invalid because the '080 patent disclosed tandem platen rollers printing at the same time, none of the Patents Nos. '007, '207 or '917 were considered by the Patent Office. This Court accepts VanDerLinden's characterization of the means and operation of each of these prior art patents. The Court is especially persuaded by testimony regarding the '917 patent, which discloses every element disclosed in Claims 1–3 of the '777 patent except the two platen rollers situated side-by-side, which the preamble to the '777 patent acknowledges as taught in

the '120 patent. In light of the new prior art considered and the credible testimony of plaintiffs' expert, this Court finds the combination of old elements embodied in Claims 1–3 of the '777 patent to be "the work of the skilled mechanic, not that of the inventor." *Hotchkiss v. Greenwood*, 11 How. 248, 52 U.S. 248, 266, 13 L.Ed. 683 (1851). Thus, plaintiffs have satisfied their burden of proof as to obviousness.[7]

### B. '777 Failure of Disclosure

▌ Plaintiffs argue that Claims 1, 2, 4 and 5 of the '777 patent fail to recite the subject matter which the applicant regarded as his invention and are therefore invalid under the second paragraph of 35 U.S.C. § 112. Based on the testimony of expert Williamowsky, plaintiffs assert that defendants failed to provide antecedent definitions for the terms used in Claim 1 of the '777 patent and that the '777 patent specifications do not clearly support Claims 1–5 of the '777 patent (R 1289, 1291–1319). Additionally, based on the testimony of expert VanDerLinden, plaintiffs allege that Claims 1–5 of the '777 patent fail to set forth an enabling description of the '777 invention as required in the first paragraph of 35 U.S.C. § 112 (R 1021). Because this Court believes that plaintiffs have failed to prove that defendants violated the requirements of 35 U.S.C. § 112, plaintiffs' argument that the '777 is invalid for failure of disclosure is rejected.

▌ As has already been stated, pp. 353–354, *supra.*, 35 U.S.C. § 112 requires that in order to be valid, patent claims must particularly point out and distinctly claim the subject which the applicant regards as his invention. *Rockwell v. Midland-Ross Corp.*, 438 F.2d at 653. Ambiguous, indefinite and vague patent claims are void. *Ellipse Corp. v. Ford Motor Co.*,

452 F.2d at 170. Plaintiffs' argument that Claims 1, 2, 4 and 5 of the '777 patent fail under the second paragraph of § 112 to recite any means for adjusting the printing pressure of any platen, independently or otherwise, assumes that § 112 requires each claim to recite every aspect of the claimed invention. There is no such requirement, and Claim 3 of the '777 patent is sufficient to disclose the independent pressure adjustment means which inventor Brown regarded as his invention.

Furthermore, the testimony of plaintiffs' expert Williamowsky is rejected as improper hindsight not based on the perspective of one of ordinary skill in the art at the time the invention was made. As established in the earlier analysis of § 112, the proper application of the § 112 precision requirement is at the time the patent claims were written. In contrast, this Court is persuaded by the testimony of defendants' expert Maul to the effect that a person of ordinary skill in the art would, at the time of the invention, find Claim 1 of the '777 patent understandable, *see* § 112 (first paragraph); *Application of Edwards*, 568 F.2d 1349, 1352 (Cust. & Pat.App.1978); *Application of Hawkins*, 486 F.2d 569, 574 (Cust. & Pat.App.1973). It is, therefore, this Court's conclusion that the § 112 precision requirement is satisfied.

Plaintiffs also allege that the '777 invention is non-enabling. This Court accepts Maul's testimony and VanDerLinden's cross-examination testimony which agree that the pressure adjusting screws do affect an adjustment of pressure on each platen roller independently. VanDerLinden's direct testimony as to plaintiffs' non-enabling argument is rejected as contradicted by his cross-examination testimony. The Patent

---

**7.** Defendants argue that: 1) the '207 patent discloses no means for adjusting pressure of the single platen roller; 2) the '120 patent discloses no independent means for adjusting pressure of each of the two platen rollers; 3) the '007 patent discloses a stationary double platen roller with no independent means for supporting each platen roller; 4) the '080 patent discloses two tandem platen rollers which print in one stroke; and 5) the '917 patent

discloses a single platen roller which naturally has nothing to do with separate means for supporting two platen rollers. Defendants further contend that none of the prior art patents teach the combination of elements embodied in Claims 1–3 of the '777 patent. Despite these distinctions, the combined teachings of the prior art Patents Nos. '207, '007, '080, '120 and '917, render the '777 patent invalid for obviousness.

Office twice rejected the claims and drawings in the '777 patent application under § 112 before allowing them, and such evidence in the file wrapper history strengthens the presumption of validity of Claims 1–3 of the '777 patent. Plaintiffs have failed to satisfy their burden of proof as to invalidity under § 112.

### C. '777 Fraud

Plaintiffs first argue that defendants acted fraudulently when they did not inform the Patent Office Examiner that claims 1–3 of the '777 patent did not satisfy the second paragraph of 35 U.S.C. § 112. As with many of defendants' allegations of fraud, the latter is obviated by this Court's finding that Claims 1–3 fully satisfy the statutory precision requirements.

Plaintiffs next argue that defendants acted fraudulently in failing to disclose the '007 prior art patent. In the absence of clear and convincing proof of "wrongfulness, willfulness, or bad faith," *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. at 814–815, 65 S.Ct. at 987–988, it is a permissible exercise of a patentee's judgment to withhold prior art which the patentee believes would not affect the Examiner's evaluation of the pending application. *CTS Corp. v. Piher International Corp.*, 527 F.2d at 99–100. Plaintiffs have failed to offer clear and convincing proof of bad faith by defendants in not disclosing the '007 patent, and therefore plaintiffs have failed to carry their burden of proof as to fraud.

### D. '777 Fraud for Failure to Disclaim

Plaintiffs argue that defendants engaged in inequitable conduct amounting to fraud when they failed to disclaim Claims 4 and 5 of the '777 patent, which defendants removed from their infringement claim prior to trial. Plaintiffs argue that the failure to disclaim Claims 4 and 5 of the '777 patent constituted improper conduct which requires the Court to dismiss the defendants'

infringement action as to all the claims of the '777 patent.

35 U.S.C. § 288 provides that:

"Whenever, without deceptive intention a claim of a patent is invalid, an action may be maintained for the infringement of a claim of the patent which may be valid. The patentee shall recover no costs unless a disclaimer of the invalid claim has been entered at the Patent and Trademark Office before the commencement of the suit."

Based on this statutory provision, it has been held that "invalidity of any part of a patent will defeat the entire patent unless (1) the invalid portion was claimed through inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, and (2) is disclaimed without unreasonable neglect or delay." *Strong v. General Electric Co.*, 434 F.2d 1042, 1045 (5th Cir. 1970). It is on the basis of this rule of law that plaintiffs argue that defendants' infringement action must be dismissed as to all claims of the '777 patent.

This Court rejects plaintiffs' argument for two reasons. First, Claims 4 and 5 of the '777 patent are not in controversy in this case since defendants have never made a specific charge of infringement under them. Second, dismissal of the action is not appropriate where, as here, plaintiffs have failed to prove bad faith or deceptive intention on the part of defendants in procuring the patent from the Patent Office.[8] In the absence of clear and convincing proof of bad faith, imperfect preparation in failing to drop Claims 4 and 5 from defendants' infringement suit does not require invalidation of the '777 patent under § 288.

### Conclusion

Defendants have requested treble damages and attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285, alleging willful infringement by plaintiffs. Because this is a

---

8. Under § 288, the relevant question is whether bad faith or deceptive intention were present at the time of procurement of the patent from the Patent Office. *Chromalloy American Corp. v. Alloy Surfaces Co.*, 339 F.Supp. 859, 875 (D.Del.1972).

close case, and only one of defendants' three patents has been found to be valid and infringed, it must be said that at any time the validity and infringement of the three patents was "open to honest doubt" and that, as a result, defendants have not proven that plaintiffs acted in a bad faith belief that the patents were invalid. *International Mfg. Co. v. Landon, Inc.*, 336 F.2d 723, 728 (9th Cir. 1964) *cert. denied* 379 U.S. 988, 85 S.Ct. 701, 13 L.Ed.2d 610 (1965), *Artmoore Co. v. Dayless Mfg. Co.*, 208 F.2d 1, 5, *cert. denied* 347 U.S. 920, 74 S.Ct. 518, 98 L.Ed. 1075 (1954) (7th Cir. 1953). Defendants admitted the closeness of the technology in the art by citing a low level of technological content in data recorders in their 1980–84 growth plan. Additionally, defendants have not carried their burden of proof as to willful infringement. In light of the latter and in light of the closeness of this case, treble damages and attorneys' fees will not be awarded to defendants under 35 U.S.C. §§ 284 and 285. Similarly, as to the two patents held invalid, despite the weight of the prior art, the issues of patent validity and infringement are sufficiently debatable to counsel against an award of treble damages and attorneys' fees to plaintiffs under 35 U.S.C. § 285. *Ashland Oil, Inc. v. Delta Oil Products Corp.*, 212 USPQ at 523. *See Wahl v. Carrier Mfg. Co.*, 511 F.2d 209, 214 (7th Cir. 1975).

In sum, it is hereby ordered that:

1. Claim 7 of U.S. Patent No. 3,272,120 to Johnson is valid and infringed by plaintiffs' accused devices.

2. Claim 12 of U.S. Patent No. 3,340,800 to Gruver et al., and Claims 1–3 of U.S. Patent No. 3,763,777 to Brown are invalid for obviousness under 35 U.S.C. § 103.

3. Plaintiffs' and defendants' requests for treble damages and attorneys' fees under 35 U.S.C. § 285 and 35 U.S.C. § 284 and 285, respectively, are denied.

IT IS SO ORDERED.